## STATE *v.* ISAIAH SHOAF.

On a trial of a defendant for receiving a stolen horse, it was in evidence, that one R was found with the horse at the barnyard of the prosecutor by his, the prosecutor's son, and that R offered to give the son $75 for the horse, knowing that it did not belong to the son, but the father, and that in company with the son he carried the horse off, promising to pay the $75 a t a future time: *Held*, to be some evidence that R did not take the horse *animo furandi*, and that it was error for his Honor, on the trial below, to charge that according to such evidence, R was guilty of larceny.

INDICTMENT for LARCENY, and receiving stolen goods, tried before *Cloud, J.*, at the Fall Term, 1872, of DAVIDSON Superior Court.

From the case accompanying the record it appears, that the defendant was charged with stealing a mare, the property of one Davidson Link, and in another Court with receiving the mare knowing her to be stolen. The evidence, as to the material facts, was, that the defendant was found in possession of the mare, eight days after she had been taken from the stable of Link, the prosecutor. That when arrested, he gave contradictory statements as to how he became possessed of the mare. A son of the prosecutor testified, that he was at his father's barnyard, and saw one Reed with the mare, with a bridle and halter on. That Reed told him, that he would give him, the witness, $75 for her; that they went to the meadow, Reed leading the mare; when there, Reed said he would pay the witness the $75 the next time he saw him. That the night before this, Reed asked the witness where his father kept his mare. Witness had no authority to sell the mare, and Reed knew that she did not belong to him, but to his father.

It further appeared that there was a defect about one of the feet of the mare, and that she was tracked to within thirty yards of Reed's house. One Bell swore that he had sold to the defendant a bridle just before the alleged stealing of the mare, and that the one found on her at the time

·of the defendant's arrest, was the same bridle to the best of his knowledge.

On the part of the defendant, the Court was asked to ·charge the jury that the defendant could not be convicted of receiving the mare, knowing her to be stolen, unless Reed was guilty of larceny; and that Reed was not guilty, if he got the mare as testified to by the son of the prosecutor, and believed that the son could not sell the same.

His Honor charged the jury if the son was believed, then Reed knew that he, the son, did not own the mare and had no authority to sell her; and that it was larceny in Reed to take the mare as testified to by the son, if he took her fraudulently. And that the defendant's guilt depended upon the fact, whether he received the mare from Reed, knowing she had been stolen.

Jury returned a verdict finding the defendant guilty. Motion for a new trial; motion overruled. Judgment and appeal by defendant.

*Blackmer & McCorkle*, for defendant.
*Attorney General Hargrove*, contra.

BOYDEN, J. In this case his Honor was requested to charge the jury, that Reed was not guilty of larceny if he got the horse as testified to by the son of the prosecutors, if he believed the son could sell the horse. His Honor declined to charge as requested, but instructed the jury that if the witness Link was to be believed, then Reed knew that the son was not the owner of the horse and had no authority to sell.

But he undertook to sell upon a credit, and although he informed Reed that the horse belonged to his father, he did not inform him that he had not authority to dispose of the horse, although on the trial, he did testify that he had no such authority.

We think the defendant was entitled to the instruction asked, as we infer from the case as sent here that Reed and his place of residence was well known, and as there is no evidence that he fled the county or attempted to conceal the horse or himself, there was no evidence of larceny.

Had it appeared that Reed had immediately fled the county with the horse, or that he had concealed himself or the horse, then his Honor should have submitted the question to the jury, whether this trade and chaffering with the son about the trade was not a mere trick and artifice, thus fraudulently to obtain possession of the horse and then to flee the country, and deprive the owner of all redress; and if the jury should so find, then Reed was guilty of larceny, and the defendant would be guilty of the charge in the second count, if he knew of the theft of Reed; but otherwise they must find him not guilty.

PER CURIAM.                                    *Venire de novo.*