STATE v. WAYNE DELK.

(Filed 15 December, 1937.)

**1. Criminal Law § 54b: Larceny § 8—**

Where defendant is charged with larceny of different articles of personalty in separate counts, a verdict of guilty of larceny of one of the articles of personalty constitutes an acquittal of the count charging larceny of the other article of personalty.

**2. Larceny §§ 1, 6—Where defendant takes personalty with consent of owner, he is not guilty of larceny in the absence of fraud, etc.**

Evidence that prosecuting witness gave defendant a wrist watch to wear for the night and return in the morning, and that defendant left that night and did not return the watch until several days later is insufficient to be submitted to the jury on a charge of larceny of the watch, since the evidence shows that defendant took the watch with the consent of the prosecuting witness and did not obtain possession of same by any artifice, trick, connivance, or fraud, and negatives felonious intent on the part of defendant at the time of obtaining possession, and whether defendant had a latter formed felonious intent is immaterial, since such subsequent intent cannot affect the character of the original taking.

**3. Larceny § 6—**

All elements of larceny must be established by sufficient competent evidence, and evidence that raises a mere suspicion, conjecture, or possibility is insufficient to be submitted to the jury.

APPEAL by defendant from *Phillips, J.,* and a jury, at September Term, 1937, of GUILFORD. Reversed.

The defendant was tried on a bill of indictment charging him with the larceny of (1) a Gruen wrist watch; (2) $63.75 in money, the property of one Tom Allen. There were counts also for receiving said property knowing same to have been stolen. The defendant pleaded not guilty to the indictment.

Tom Allen, the prosecuting witness, testified, in part, in regard to the watch: "He was dressed. About an hour after we arrived he informed me he was sick. He had gone to bed. I had gone to bed. I had a watch. I had taken the watch off to wind it and I laid it on my dresser and he wanted to try it on that night. It was a wrist watch, and he said he would give it back the next morning. He did not give it back next morning. I got it back Wednesday afternoon. I was in my room when he said he wanted to try it on, and he went to bed in the same room. It was something like an hour after we got home when he left, maybe an hour and a half. I think I had been dozing and he was sitting on the side of the bed and I asked what was the matter, and he said he was sick. He dressed after that. . . . Q. When did you

miss the watch. Ans.: I let him put the watch on that night. I did not tell him he could not take it away. Q. Did you know he was taking it away? Ans.: I never thought about it at that time. Yes, I knowed he was taking it because he put it on. I did not see him have it when he left, I just know he put it on. I did not see him have it when he left, I just know he put it on when he went to bed. . . . In consequence of some call I went there, to Archdale. Yes, he gave me the watch then. He had it. (Cross-examination): I let him have the watch myself when I taken it off to wind it; he said he would give it back to me the next morning. Yes, I let him have it, and he said he would give it back to me next morning. . . . Yes, he came out to the car at the service station there and gave me my watch back."

The defendant testified, in part: "Mr. Allen was not asleep when I got up the first time; he had been asleep. I had been in bed before I got up, not over thirty minutes. Before that he gave me the watch, took off the watch, and I told him to let me look at it, and he handed it to me and I tried it on my arm. I had been planning on buying me one and started to take the watch off and he said, 'Just give it back to me next morning.' So I left that night with the watch on my arm and forgot about it. I did not realize I had the watch on until after I left and did not want to go back then, so I called him up on Monday and he came down and I gave him the watch back." On cross-examination the defendant admitted that he had been charged and convicted on some three other offenses.

The jury found defendant guilty of larceny of the watch, and the court below pronounced judgment on the verdict. The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be considered in the opinion.

*Attorney-General Seawell and Assistant Attorney-General McMullan for the State.*

*Gaston A. Johnson and D. H. Parsons for defendant.*

CLARKSON, J. From the finding of the jury there was an acquittal of the defendant on the charge of larceny of the $63.75 in money.

In *S. v. Fisher,* 162 N. C., 550 (553), speaking to the subject, we find: "It is conceded, as we understand, that the special verdict was returned upon the second count, and there is no verdict upon the first count. It was held in *S. v. Taylor,* 84 N. C., 773, that 'where the jury find a defendant guilty of one count, and say nothing in their verdict concerning other counts, it will be equivalent to a verdict of acquittal as to them.' " *S. v. Hampton,* 210 N. C., 283 (284).

At the close of the evidence for the State, and at the close of all the evidence, the defendant made motions in the court below for judgment as of nonsuit. C. S., 4643. The court below overruled the motions, and in this we think there was error.

We see no evidence that defendant obtained or concealed possession of the watch by any artifice, trick, connivance, or fraud. It may be wise to quote fully from *Pearson, C. J.,* on the subject of larceny in *S. v. Deal,* 64 N. C., 270 (273): "If one takes the property of another, it is a mere trespass, for which an action lies; if *manu forti,* the owner being present, it is a forcible trespass, for which an action lies, and also an indictment. If the taking be with a felonious intent, the act is larceny, either stealing or robbery. So it turns upon the felonious intent, and the question is what is meant by a felonious intent. A prominent feature of it is that the act be done in a way showing an intention to 'evade the law,' that is, not to let the owner know who took his property, and against whom to bring his action, or who is to be indicted. If one takes property slyly—by stealth—he steals; if he takes the property forcibly, under a mask, or with his face blacked as a disguise, or when he supposes the owner cannot identify him, as on the highway, he commits robbery. So the prominent feature of a felonious intent is 'an attempt to evade justice.' Such is the doctrine laid down by Foster as the common law, and such I know was the opinion of *Chief Justice Henderson,* whose power of reflection exceeded that of any man who ever had a seat on this bench, unless *Judge Haywood* be considered his equal in this respect. *Judge Henderson* used to ask: 'What is the difference between trespass and larceny?' Reply: 'Felonious intent.' 'What is meant by a felonious intent?' Reply: 'An intent to conceal from the owner who took his property, so that he may not know against whom to bring his action or whom to indict.' If a man takes my property openly and above board, I know whom to sue, and if force is used, I can also have him indicted. So, such acts are not apt to occur, and the public needs no special protection against them. Beccaria on Crimes. But where there is an attempt to do the thing slyly, or do it by force under circumstances of disguise, the community needs protection, and these acts are treated as being done with a felonious intent, and are punished accordingly. *Id.*"

In *S. v. Kirkland,* 178 N. C., 810 (813), it is said: "In 17 R. C. L., 5, one of the latest authorities, and reliable, defines larceny: 'As the felonious taking by trespass and carrying away of the goods of another without the consent of the latter, and with the felonious intent permanently to deprive the owner of his property and to convert it to his, the taker's own use,' a definition following the decisions in our State, and which we approve with the interpretation that the intent to convert

to one's own use is met by showing an intent to deprive the owner of his property permanently for the use of the taker, although he might have in mind to benefit another." *S. v. Adams,* 115 N. C., 775.

In *S. v. Holder,* 188 N. C., 561 (563), we find: "To constitute the crime of larceny there must be an original, felonious intent, general or special, at the time of the taking. If such intent be present, no subsequent act or explanation can change the felonious character of the original act. But if the requisite intent be not present, the taking is only a trespass, and it cannot be made a felony by any subsequent misconduct or bad faith on the part of the taker. *S. v. Arkle,* 116 N. C., 1031."

The prosecuting witness' testimony as above set forth was to the effect that he let defendant have the watch, knew he had it, and defendant promised to return it the next morning, and the watch was returned within a few days. The evidence negatives a felonious intent and was not sufficient to have been submitted to the jury. All the elements of larceny must be established by sufficient competent evidence. Evidence that raises a mere suspicion, conjecture, and possibility is insufficient foundation for a verdict and should not be left to a jury.

For the reasons given, the judgment of the court below is

Reversed.