STATE OF NORTH CAROLINA v. CLINTON BABB

No. 7711SC416

(Filed 2 November 1977)

**1. Receiving Stolen Goods § 5— fatal variance between indictment and proof**

Where the indictment sufficiently alleged the felonious receiving of stolen goods knowing them to have been stolen (taken by common-law larceny) in violation of G.S. 14-71, but the State's evidence tended to show that defendant received property which was taken by a tire store employee in violation of the felony statute, G.S. 14-74, there was a fatal variance between the charge and the proof.

**2. Receiving Stolen Goods § 5— purchasing property in public place—factors to be proved by State**

Where a defendant, charged with a violation of G.S. 14-71, purchases property in a public business from one in custody or possession and with the actual or apparent authority to sell it, the State must prove that the property was taken by the seller in violation of a felony statute and that at the time of the transaction the defendant had knowledge, or reasonable grounds to believe, that the seller had so taken the property *and* had no authority to transact the sale.

APPEAL by defendant from *McLelland, Judge.* Judgment entered 27 January 1977, in Superior Court, LEE County. Heard in the Court of Appeals 17 October 1977.

Defendant pled not guilty to the charge of receiving eight tires and eight tubes stolen from Budd's Master Tire Service, Inc., knowing them to have been feloniously stolen.

Richard Cummings, for the State, testified that on 30 January 1976 he was and had been for several years the foreman of the truck tire department of Master Tire Service, Inc. On that date defendant came to the shop to pay for eight tires he had purchased in 1975 for about $1400. While there defendant asked Cummings if he could get for defendant eight truck tires and tubes at "a good price." Cummings told defendant he could get him eight tires and tubes for $800, the same brand (Michelin) defendant had bought from Master Tire Service for $1200 four or five years ago. In the early morning of 2 February 1976 Cummings telephoned defendant that he had the tires. Defendant's wife, on her way to school, stopped by the shop and gave $800 to Cummings. Cummings took four tires and tubes from the Tire Service, put them on rims, ordered four other tires and tubes from a tire outlet in

Greensboro (billing them to the Tire Service), and had an employee go to Greensboro to get them and deliver them to Hunter's Garage, where they were mounted on defendant's truck. Cummings did not give an invoice and receipt to defendant as he had on the two previous occasions when defendant had bought tires from the Tire Service. Cummings further testified that he entered a plea of guilty to the charge of "larceny by employee" and was then serving a prison sentence.

An officer of the Master Tire Service testified that the retail value of the eight tires and tubes was $2,106.

Defendant testified that when he settled his account on 30 January with Cummings he was charged interest in the sum of $212.00, and Cummings told him he would get credit for the interest paid when he next bought tires there. He told Cummings he needed eight radial tires then. It was generally known blemished steel radials could be bought for $100 each if paid in cash. Cummings called him at 6:00 a.m. on 2 February and told him he had the tires he wanted for $800, so he sent his wife by the shop with the money. On the following day Cummings had the tires mounted on rims by an employee. Defendant presumed that the tires were blemished in view of the price.

The jury found defendant guilty as charged, and from judgment imposing a suspended sentence, defendant appeals.

*Attorney General Edmisten by Assistant Attorney General James Peeler Smith for the State.*

*Pittman, Staton & Betts by Stanley W. West and William W. Staton for defendant appellant.*

CLARK, Judge.

Did the trial court err in denying defendant's motion for judgment as of nonsuit on the ground that there was no evidence that the tires and tubes were stolen property?

The indictment charges that defendant did feloniously receive property knowing the same to have been "feloniously stolen, taken, and carried away, . . ." The quoted words are a short-hand definition of common-law larceny. But the evidence fails to establish common-law larceny of the tires and tubes. One element of common-law larceny is that the property must be

---

---

taken under such circumstances as to amount technically to a trespass, a wrongful taking and carrying away. *State v. Griffin*, 239 N.C. 41, 79 S.E. 2d 230 (1953); *State v. Delk*, 212 N.C. 631, 194 S.E. 94 (1937); *State v. Watts*, 25 N.C. App. 194, 212 S.E. 2d 557 (1975).

All of the evidence tends to show that Richard Cummings was, and for several years had been, the foreman of the truck tire department of Budd's Master Tire Service, Inc. He had apparent and actual authority to sell the truck tires and accessories in his department. As a witness for the State, Cummings testified that he had pled guilty to the charge of "larceny by employee." We must assume that he was charged with and pled guilty to the violation of G.S. 14-74, which provides in substance that if any servant or other employee to whom property shall be delivered for safekeeping by the master converts the same to his own use with the intent to steal and defraud contrary to the trust; or if any servant shall embezzle such property, or otherwise convert the same to his own use, with intent to steal or defraud the master, he "shall be fined or imprisoned . . . not less than four months nor more than ten years, at the discretion of the court: . . . ."

In *State v. Higgins*, 1 N.C. 36 (1792), it was pointed out that G.S. 14-74 was a substantial prototype of an old English statute, 21 Henry VIII, c. 7, ss. 1, 2. The court held that defendant was not a "servant" within the meaning of the statute, then determined that under the indictment charging a violation of the statute defendant could not be convicted of common-law larceny. We quote pertinent excerpts from the decision:

". . . In the preamble it is said, after stating such a fact as the one in the indictment, which misbehavior so done, was *doubtful* at the common law, whether it was felony or not.

\*     \*     \*     \*

"Towards the year 1470, under the reign of Ed. IV, it was held that where a person entrusted goods to the care of a servant, the servant could not take them feloniously, because they were in his possession. 10 Ed. IV, 14.

\*     \*     \*     \*

"In the time of Henry VIII, says Mr. Reeves, a breach of trust and embezzlement of effects confined to the custody of a person, were thought not to be a *felonious taking and carrying away.* This kind of fraud had of late grown common, from the impunity it enjoyed; and many now thought that, as it carried in it much of the mischief, it deserved the punishment annexed to felony." 1 N.C. at 41, 42, and 44.

It is clear from *Higgins* that the purpose of the statute was to make the conduct described therein a crime because it did not constitute the crime of common-law larceny. In *State v. Wilson*, 101 N.C. 730, 7 S.E. 872 (1888), it was held that a defendant could not be convicted for a violation of G.S. 14-74 under an indictment charging common-law larceny; that it was necessary to allege that the property was received and held by defendant in trust, or for the use of the owner, and being so held, it was feloniously converted or made away with by the servant or agent.

G.S. 14-71 provides that if any person shall receive property "the stealing or taking whereof amounts to larceny *or a felony,* either at common law *or by virtue of any statute made or hereafter to be made,* . . ." [Emphasis added.] It appears that under the statute the property knowingly received or concealed could include not only stolen property but trust property converted in violation of G.S. 14-74 or property taken in violation of any other felony statute. But if the property knowingly received was not stolen but was taken in violation of some felony statute, the indictment should so allege.

As a general rule the indictment must sufficiently define the crime or set forth all its essential elements for the purpose of informing the accused of the specific offense of which he is accused so as to enable him to prepare his defense or plead his conviction or acquittal as a bar to further prosecution for the same offense. *State v. Wells*, 259 N.C. 173, 130 S.E. 2d 299 (1963). "An indictment for an offense created by statute must be framed upon the statute, and this fact must distinctly appear upon the face of the indictment itself; and in order that it shall so appear, the bill must either charge the offense in the language of the act, or specifically set forth the facts constituting the same. . . ." *State v. Jackson*, 218 N.C. 373, 375, 11 S.E. 2d 149, 151 (1940).

[1] The indictment in the case *sub judice* sufficiently alleges feloniously receiving stolen goods knowing them to have been

stolen (taken by common-law larceny) in violation of G.S. 14-71. But the State's evidence tends to show that defendant received property which was taken by Cummings, the shop foreman, in violation of the felony statute, G.S. 14-74. Cummings pled guilty to a violation of *this* felony statute. There is a variance in the charge and the proof, a failure by the State to show that the goods were stolen. A defendant must be convicted, if convicted at all, of the particular offense charged in the bill of indictment. A fatal variance between the indictment and proof is properly raised by a motion for judgment as of nonsuit, since in such instance the evidence is not sufficient to support the charge as laid in the indictment. 4 Strong, N.C. Index 3d, Criminal Law, § 107.

By analogy, embezzlement, like G.S. 14-74, is a statutory offense. G.S. 14-90 *et seq.* And G.S. 14-71 makes it an offense knowingly to receive embezzled property in violation of a felony embezzlement statute, but such offense is distinct from that of receiving stolen goods, and a charge of receiving stolen goods is not sustained by proof that the goods were merely embezzled. 76 C.J.S., Receiving Stolen Goods, §§ 2, 16.

Admittedly, the distinction between common-law larceny and a taking of property in violation of G.S. 14-74 is minuscule, and in that sense the indictment defect is technical. However, the distinction is significant in its effect on determining the issues at trial. The case for the State and the instructions of the trial court to jury were based on the assumption that Cummings had *stolen* property. Consequently, the jury did not have the opportunity to consider, under proper instructions, the actual and apparent authority of Cummings to possess and sell the property as it affected the issues of unlawful taking by Cummings and guilty knowledge by defendant. See *State v. Shoaf*, 68 N.C. 375 (1873) where defendant, charged with receiving stolen goods, bought a horse from the son of the owner, and the court found reversible error in the failure of the trial court to instruct the jury, as requested, that the receiver was not guilty of larceny if he believed the son could sell the horse and, if so, the defendant would not be guilty of the receiving charge.

[2] Where a defendant, charged with a violation of G.S. 14-71, purchases property in a public business from one in custody or possession and with the actual or apparent authority to sell it, the State must prove that the property was taken by the seller in

violation of a felony statute, in this case G.S. 14-74, and that at the time of the transaction the defendant had knowledge, or reasonable grounds to believe, that the seller had so taken the property *and* had no authority to transact the sale.

The motion for judgment as of nonsuit should have been allowed. The judgment is vacated and the charge dismissed. The District Attorney may seek a bill of indictment charging receiving property taken in violation of G.S. 14-74, if so advised.

Vacated and dismissed.

Judges MORRIS and VAUGHN concur.