WENDY EVE WILLIAMS v. BOYLAN-PEARCE, INCORPORATED

No. 8310SC909

(Filed 3 July 1984)

1. **Malicious Prosecution § 11— absence of probable cause—sufficiency of evidence**

    In a malicious prosecution action instituted after plaintiff employee was acquitted of misdemeanor larceny of two pairs of earrings from defendant employer's store, plaintiff's evidence was sufficient to show an absence of probable cause where it tended to show that plaintiff, through forgetfulness, did wear one pair of defendant's earrings from the store, but that after defendant's agents had concluded their investigation, they could not have harbored a reasonable suspicion that plaintiff had stolen defendant's earrings.

2. **Malicious Prosecution § 15— recovery of punitive damages**

    In order for plaintiff to recover punitive damages in a malicious prosecution action, she must show that she was wrongfully prosecuted from actual malice in the sense of ill-will, spite, or desire for revenge, or under circumstances of insult, rudeness or oppression, or in a manner evidencing a reckless and wanton disregard of her rights.

**3. Malicious Prosecution § 15— punitive damages—sufficiency of evidence**

In a malicious prosecution action instituted after plaintiff employee was acquitted of misdemeanor larceny of two pairs of earrings from defendant employer's store, plaintiff's evidence was sufficient for the jury to find that plaintiff was prosecuted under circumstances which amount to insult, rudeness or oppression and in a manner evincing a reckless and wanton disregard of her rights, and the issue of punitive damages thus should have been submitted to the jury.

**4. Costs § 4.1— deposition fees—expert witness fees—refusal to allow as part of costs**

The trial court in a malicious prosecution action did not abuse its discretion in refusing to award plaintiff deposition fees and expert witness fees as part of the costs of the action. G.S. 6-18.

Judge JOHNSON concurring in part and dissenting in part.

APPEAL by plaintiff and cross-appeal by defendant from *Bowen, Judge.* Judgment entered 18 March 1983 in WAKE County Superior Court. Heard in the Court of Appeals 11 May 1984.

Plaintiff was employed as a part-time employee of defendant during the 1981 Christmas season. On 5 January 1982 she was the only employee assigned to work in the store's jewelry department. Plaintiff had been told by other employees that employees could model the jewelry. When plaintiff arrived at work on 5 January she took a pair of earrings, owned by defendant, from a display rack and placed them in her ears. She then took the two pairs of earrings which she had worn to work and put them in her purse under the counter. Later in the day plaintiff also put on a bracelet owned by defendant which matched the earrings. Plaintiff wore the jewelry out of the store to lunch. During the afternoon she returned the bracelet to the display case.

During the late afternoon plaintiff was assigned to collect the store's sales records. Once this task was completed, as the store was about to close, plaintiff rushed the fourteen carat gold jewelry down to the safe, locked the display cases and rushed to leave the store because the lights were being turned off. In her haste, plaintiff forgot to sign out, a prerequisite to being paid. She also failed to remove defendant's earrings.

After plaintiff left the store she was seized by J. M. Lynch, an off-duty police officer hired to provide store security, and was taken back into the store. Plaintiff was taken to a small room

where she was questioned for about an hour by three employees concerning an alleged theft of earrings. While he was questioning plaintiff Lynch told her that she was going to jail for ten years and that if she did not cooperate, things would "go rougher" for her. Plaintiff attempted to return the earrings she had been wearing that day, but Lynch continued to look for other earrings. Part of his efforts consisted of examining the contents of plaintiff's purse without her consent. Lynch later testified that he did not stop plaintiff because she was wearing defendant's earrings out of the store, but because he thought she had taken other earrings earlier when he saw her bend down and do something under the counter. After Lynch discovered only plaintiff's own earrings in her purse, Karen Beasley, the head of defendant's security force, subjected plaintiff to a body search.

During the hour that she was being held in defendant's store for questioning, plaintiff's request to be allowed to call her father several times was refused several times. Her request was finally granted after the search failed to reveal any evidence of stolen earrings.

After holding plaintiff for an hour, Lynch had plaintiff transported to the magistrate's office where he attempted to charge her with felonious larceny. The magistrate would only issue a warrant charging misdemeanor larceny of two pairs of earrings. Plaintiff was found not guilty of these charges in Wake County District Court.

Following her acquittal, plaintiff brought this action for malicious prosecution, seeking both compensatory and punitive damages. At the close of plaintiff's evidence and at the close of all the evidence, defendant moved for a directed verdict. At the close of all the evidence the court denied defendant's motion as to compensatory damages, but refused to submit the issue of punitive damages to the jury. The jury returned a verdict in favor of plaintiff for $1,000.00 on the issue of compensatory damages. Plaintiff appealed from the court's refusal to submit the issue of punitive damages to the jury and defendant cross-appealed, assigning as error the denial of its motion for a directed verdict and for judgment notwithstanding the verdict.

*Brenton D. Adams for plaintiff.*

*Maupin, Taylor & Ellis, P.A., by Thomas W. H. Alexander and James A. Roberts, III, for defendant.*

WELLS, Judge.

We first address the question presented by defendant's cross-appeal, i.e., whether the court erred in denying defendant's motions for a directed verdict and for judgment notwithstanding the verdict as to plaintiff's claim for compensatory damages. The question raised by defendant's motions is whether the evidence, taken in the light most favorable to the plaintiff, was sufficient to submit the issue to the jury. *See Summey v. Cauthen,* 283 N.C. 640, 197 S.E. 2d 549 (1973) and *Kelly v. Harvester Co.,* 278 N.C. 153, 179 S.E. 2d 396 (1971).

In order to establish her cause of action for malicious prosecution, plaintiff was required to show (1) that defendant instituted the criminal proceedings against her; (2) that the prosecution was without probable cause; (3) that it was with malice; and (4) that it was terminated in her favor. *Carson v. Doggett,* 231 N.C. 629, 58 S.E. 2d 609 (1950); *see also Pitts v. Pizza, Inc.,* 296 N.C. 81, 249 S.E. 2d 375 (1978). Malice may be inferred from want of probable cause, *Id.* The resolution of the case before us hinges on the issue of probable cause.

In *Smith v. Deaver,* 49 N.C. (4 Jones) 513 (1857), our supreme court defined probable cause as:

[T]he existence of circumstances and facts sufficiently strong to excite, in a reasonable mind, suspicion that the person charged with having been guilty, was guilty. It is a case of apparent guilt as contradistinguished from real guilt. It is not essential, that there should be positive evidence at the time the action is commenced, but the guilt should be so apparent at the time, as would be sufficient ground to induce a rational and prudent man, who duly regards the rights of others, as well as his own, to institute a prosecution; not that he knows the facts necessary to ensure a conviction, but that there are known to him sufficient grounds to suspect that the person he charges was guilty of the offence.

The foregoing definition was cited and approved in *Carson v. Doggett, supra.* In *Pitts v. Pizza, Inc., supra,* the court stated that probable cause has been properly defined as the existence of such facts and circumstances as would induce a reasonable man to commence a prosecution.

[1] The existence of probable cause is a mixed question of law and fact. *Pitts v. Pizza, Inc., supra.* If the facts are admitted or not in dispute, it is a question of law for the court. *Id.* Conversely, when the facts are in dispute, the question of probable cause is for the jury. *Id.* In the case now before us, the facts were disputed, plaintiff's evidence tending to show that she took no earrings from defendant's stock, but only through forgetfulness, wore one pair out of the store, while defendant's evidence tended to show that Officer Lynch observed plaintiff putting something in her purse while she was working and that plaintiff did wear a pair of defendant's earrings out of the store. Thus, the question was for the jury, and we are persuaded that from the evidence, considered in the light most favorable to plaintiff, that after defendant's agents had concluded their investigation, they could not have harbored a reasonable suspicion that plaintiff had stolen defendant's earrings. Defendant's investigation disclosed no missing earrings nor disclosed that plaintiff had committed any trespass against defendant, an element of larceny. *See State v. Brown,* 56 N.C. App. 228, 287 S.E. 2d 421 (1982); *see also State v. Babb,* 34 N.C. App. 336, 238 S.E. 2d 308 (1977). Defendant's motions for a directed verdict and for judgment N.O.V. were properly denied.

[2, 3] Next we address plaintiff's contention that the court erred in refusing to submit an issue of punitive damages to the jury. In order for plaintiff to recover punitive damages, she must show that she was wrongfully prosecuted from actual malice in the sense of ill-will, spite, or desire for revenge, or under circumstances of insult, rudeness or oppression, or in a manner evidencing a reckless and wanton disregard of her rights. *See Murray v. Insurance Co.,* 51 N.C. App. 10, 275 S.E. 2d 195 (1981) and cases cited and discussed therein.[1] *Compare Shugar v. Guill,*

---

1. A corporation is liable for punitive damages for a tort wantonly committed by its agents in the course of their employment. *Clemmons v. Insurance Co.,* 274 N.C. 416, 163 S.E. 2d 761 (1968).

304 N.C. 332, 283 S.E. 2d 507 (1981). Plaintiff need only show one of these circumstances in order to recover. She contends that there is evidence from which the jury could have found that she was prosecuted under circumstances of insult, rudeness or oppression and evidence from which a jury could have found that she was prosecuted in a manner which evidenced a reckless and wanton disregard for her rights.

> In jury trials the usual rules governing motions for a directed verdict apply when there is such a motion as to a claim for punitive damages on the grounds of insufficiency of evidence, and the trial judge must determine as a matter of law whether the evidence when considered in the light most favorable to the plaintiff is sufficient to carry the issue of punitive damages to the jury.

*Shugar v. Guill, supra.* The evidence in this case so viewed clearly reveals support for plaintiff's claim that she was prosecuted under circumstances which amount to insult, rudeness or oppression. While a polite, but firm, investigation may have served the better interest of both plaintiff and defendant, the conduct of defendant's employees in this case was such that a jury could find that plaintiff was treated rudely and oppressively.

There was also evidence from which the jury could find that plaintiff was prosecuted in a manner evincing a reckless and wanton disregard of her rights. The employee who had plaintiff arrested testified that he did not try to prove her innocence because "I try to prove someone's guilt routinely." While he was vigorously trying to prove plaintiff's guilt he failed to take an inventory of the jewelry department to see if there were any items missing, did not check plaintiff's sales book to determine if she had sold any jewelry, did not check with anyone regarding plaintiff's personnel record or her character. These are all admissions which could be found to evidence a reckless and wanton disregard of plaintiff's right to be free from malicious prosecution. We hold that for the reasons stated above the court erred in refusing to submit an issue of punitive damages to the jury. We therefore reverse the court's judgment as to this question.

In a case such as this, where the question of granting a directed verdict is a close one, we feel it appropriate to emphasize the procedural point that,

Williams v. Boylan-Pearce, Inc.

[T]he better practice is for the trial judge to reserve his decision on the motion and allow the case to be submitted to the jury. If the jury returns a verdict in favor of the moving party, no decision on the motion is necessary and an appeal may be avoided. If the jury finds for the nonmoving party, the judge may reconsider the motion and enter a judgment notwithstanding the verdict under G.S. 1A-1, Rule 50(b), provided he is convinced the evidence was insufficient. On appeal, if the motion proves to have been improperly granted, the appellate court then has the option of ordering entry of the judgment on the verdict, thereby eliminating the expense and delay involved in a retrial. . . .

(Citations omitted.) *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E. 2d 678 (1977).

[4] Finally, plaintiff argues the court erred in refusing to award her the costs of depositions and expert witness fees. N.C. Gen. Stat. § 6-18 (1981) provides that costs are to be allowed in malicious prosecution actions. The question we must decide is whether deposition fees and expert witness fees are costs within the purview of the statute. In *Dixon, Odom & Co. v. Sledge*, 59 N.C. App. 280, 296 S.E. 2d 512 (1982) this court said a trial court in its discretion may tax deposition costs as part of the "costs" of an action. In this action the court in its discretion refused to award deposition expense. We are unable to find any abuse of discretion and therefore affirm the court's order. N.C. Gen. Stat. § 7A-314(d) (1981) provides that the court in its discretion may award expert witness fees. These fees may be awarded only if the witness' testimony was material and competent. *City of Charlotte v. McNeely*, 281 N.C. 684, 190 S.E. 2d 179 (1972). The court in this case exercised its discretion in failing to award such fees. We find no abuse of discretion and therefore uphold the court's ruling.

The judgment of the court is affirmed in part and reversed in part and the matter is remanded for a new trial as to the issue of punitive damages.

As to plaintiff's appeal, affirmed in part and reversed in part and remanded for a new trial as to the issue of punitive damages.

As to defendant's cross-appeal, affirmed.

Judge BECTON concurs.

Judge JOHNSON concurs in part and dissents in part.

Judge JOHNSON concurring in part and dissenting in part.

I concur in the majority's holding that (1) the trial court correctly denied defendant's motions for a directed verdict and for judgment n.o.v. and (2) that the trial court did not abuse its discretion in refusing to award plaintiff costs of depositions and expert witness fees. However, I dissent from the majority's holding that the trial court erred in failing to submit an issue of punitive damages to the jury.

Plaintiff concedes that there is no evidence of "actual malice," in the sense of personal ill-will, spite, or desire for revenge. However, plaintiff offers two theories in support of her claim for punitive damages: (1) plaintiff was wrongfully prosecuted in a manner evincing a reckless and wanton disregard of plaintiff's rights and (2) plaintiff was wrongfully prosecuted under circumstances of insult, rudeness or oppression. Plaintiff seeks punitive damages based upon the conduct of four of defendant's employees: J. M. Lynch, a police officer of the city of Raleigh hired by defendant to handle its security problems; Karen Beasley, also hired by defendant in the capacity of a security officer; Blair Wall, defendant's personnel manager; and Earl Barnes, defendant's store manager. In an effort to demonstrate that defendant's employees acted with actual malice, plaintiff relies upon the following circumstances: (1) Officer Lynch's failure to immediately confront plaintiff about his suspicion of plaintiff prior to arresting her and Lynch's testimony that he routinely tries to prove one's guilt, (2) Officers Lynch and Beasley's search of plaintiff's person and pocketbook, (3) statements Officer Lynch made to plaintiff while interrogating her, (4) Wall's failure to "get involved" and obtain additional information about the facts surrounding plaintiff's arrest, (5) Barnes' failure to talk to plaintiff's family and friends, and (6) the refusal of Officer Lynch to allow plaintiff to be transported by her father to the magistrate's office.

The undisputed evidence shows that Wall did not "get involved" because it was a security problem being handled by de-

fendant's security personnel, in whom Wall had confidence. Barnes was reluctant to talk with plaintiff's family and friends because of his confidence in the security personnel and the fact that he was out of town when plaintiff was arrested. After observing plaintiff's activities in the jewelry department on the morning of January 5, 1982, Officer Lynch continued to observe plaintiff's activities "to either corroborate (his) suspicions, or just to get the whole story that was going on that day." Plaintiff was under arrest at the time a search of her person and pocketbook were made and the scope and manner in which the searches were conducted were reasonable. In transporting plaintiff in a police vehicle, Officer Lynch was following the guidelines of the Raleigh Police Department. It appears that plaintiff has taken Officer Lynch's statement about his efforts to prove individuals guilty out of context. The full context in which the statement was made is as follows: On cross-examination Officer Lynch was asked, "And you weren't interested in determining her (plaintiff) innocence, were you?" Officer Lynch answered, "Well, I don't know exactly how I can answer that. As a police officer, I have to deal with the elements of a crime and gathering information. I don't go trying to prove someone's innocence, as much (as) I try to prove someone's guilt routinely." Clearly, when read in full context, the statement does not rise to the level of malice. None of the evidence of record is sufficient to support a claim for punitive damages and the court properly refused to submit a punitive damage issue.