HERMAN BEST v. DUKE UNIVERSITY, TRADING AND DOING BUSINESS AS DUKE UNIVER-
SITY HOSPITAL AND DUKE MEDICAL CENTER

No. 51PA94

(Filed 6 October 1994)

### 1. Malicious Prosecution § 3 (NCI4th)— elements of action

A plaintiff must establish four elements to support a mali-
cious prosecution claim: (1) defendant initiated the earlier pro-
ceeding; (2) malice on the part of defendant in doing so; (3) lack
of probable cause for the initiation of the earlier proceeding; and
(4) termination of the earlier proceeding in favor of the plaintiff.

**Am Jur 2d, Malicious Prosecution § 6.**

### 2. Malicious Prosecution § 19 (NCI4th)— prosecution for lar-ceny—probable cause shown as matter of law

Probable cause existed as a matter of law for plaintiff's arrest
on charges of trespass and larceny and for his subsequent prose-
cution for larceny so that the trial court should not have submit-
ted an issue of malicious prosecution to the jury where the
uncontradicted evidence at trial tended to show that a detective
working as a security officer at a hotel on the Duke University
campus observed plaintiff acting suspiciously in the area of the
Duke Faculty Club at 5:00 a.m. on 26 August 1989; the detective
saw plaintiff turn his vehicle into the Faculty Club driveway, turn
off the headlights, and continue to move down the driveway; ten
to fifteen minutes later plaintiff's vehicle went to the rear of the
hotel; when the detective tried to stop plaintiff as he exited, plain-
tiff sped around his vehicle; the detective chased plaintiff's vehi-
cle, and plaintiff did not stop when the detective pulled beside
him, rolled down his window, and flashed his badge; plaintiff did
not stop until other officers who had joined in the chase flashed
their blue lights; all of the officers observed wrought-iron patio
furniture in plaintiff's vehicle; plaintiff told the officers that he
was taking the furniture to a friend's house; and a Faculty Club
employee reported to the police later that morning that wrought-
iron patio furniture, similar to those pieces in defendant's vehicle,
was stolen from the Faculty Club between 10:00 p.m. on 25
August and 8:30 a.m. on 26 August.

**Am Jur 2d, Malicious Prosecution §§ 159-183.**

BEST v. DUKE UNIVERSITY

[337 N.C. 742 (1994)]

Acquittal, discharge, or discontinuance of criminal charge as evidence of want to probable cause in malicious prosecution action. 59 ALR2d 1413.

Comment Note.—Probable cause or want thereof, in malicious prosecution action, as question of law for court or of fact for jury. 87 ALR2d 183.

3. Malicious Prosecution § 19 (NCI4th)— dismissal of criminal charge by prosecutor—lack of probable cause not shown

Where uncontroverted evidence existed that was sufficient to establish probable cause as a matter of law, evidence of the dismissal of the criminal charge by the district attorney before the criminal trial is not sufficient evidence of a lack of probable cause to establish a question of fact for the jury in a malicious prosecution action. To the extent that *Pitts v. Village Inn Pizza, Inc.*, 296 N.C. 81, may be read to suggest otherwise, it is disapproved. Furthermore, the dismissal of a trespass charge did not establish a prima facie showing of the absence of probable cause for a larceny charge based on the same events that was fully tried.

Am Jur 2d, Malicious Prosecution §§ 159-183.

Acquittal, discharge, or discontinuance of criminal charge as evidence of want to probable cause in malicious prosecution action. 59 ALR2d 1413.

Comment Note.—Probable cause or want thereof, in malicious prosecution action, as question of law for court or of fact for jury. 87 ALR2d 183.

4. Negligence § 6 (NCI4th)— negligent infliction of emotional distress—arrest of defendant—insufficient evidence of negligence

Plaintiff failed to present sufficient evidence of negligent conduct by defendant public safety officer resulting in plaintiff's arrest to survive defendant's motion for judgment notwithstanding the verdict in an action for the negligent infliction of emotional distress where the uncontroverted evidence tended to show: defendant knew that another officer had seen plaintiff's vehicle go down the driveway of the Duke Faculty Club at 5:00 a.m. with its headlights off, and that plaintiff led the officer on a chase when the officer attempted to stop his vehicle after it

**BEST v. DUKE UNIVERSITY**

[337 N.C. 742 (1994)]

exited the Faculty Club driveway; after plaintiff's vehicle was stopped, defendant personally observed patio furniture in the vehicle; defendant obtained a warrant for plaintiff's arrest after the theft of patio furniture from the Faculty Club was reported later that morning as having occurred during the time period when plaintiff was observed in the vicinity; probable cause existed as a matter of law for plaintiff's arrest; when defendant went to plaintiff's place of work to make the arrest, he allowed plaintiff to retrieve personal items; defendant then handcuffed plaintiff outside and placed him in a vehicle; and the handcuffing of plaintiff was in defendant's discretion and was reasonable in light of defendant's knowledge that plaintiff had fled from another officer.

**Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 1, 2.**

5. **Malicious Prosecution § 10 (NCI4th)— punitive damages— insufficient evidence**

The trial court did not err in granting defendant public safety officer's motion for a directed verdict on the issue of punitive damages in a malicious prosecution action because the evidence was inadequate to present a question of actual malice for the jury where probable cause based on uncontroverted facts existed for plaintiff's arrest and prosecution for larceny, and plaintiff testified that the officers were polite and professional to him at his stop and during his arrest.

**Am Jur 2d, Malicious Prosecution § 94.**

Justice FRYE dissenting in part.

Chief Justice EXUM and Justice MITCHELL join in this dissenting opinion.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 112 N.C. App. 548, 436 S.E.2d 395 (1993), affirming a judgment entered by Stanback, J., on 22 May 1992 in Superior Court, Durham County. Heard in the Supreme Court 15 September 1994.

*Robert R. Seidel for plaintiff.*

*Cranfill, Sumner & Hartzog, L.L.P., by Alene M. Mercer & Kari L. Russwurm, for defendant.*

*Michael F. Easley, Attorney General, by Isaac T. Avery, III, Special Deputy Attorney General, for the State, amicus curiae.*

*Thomas D. Haigwood for the Conference of District Attorneys of North Carolina, amicus curiae.*

*Ronald L. Hall, James Rogers, and Julie Risher for the North Carolina Association of Police Attorneys, amicus curiae.*

WHICHARD, Justice.

On 26 August 1989, Detective McDonald Vick, a Durham police officer, was providing security during his off hours for the Washington-Duke Hotel, which is located on the campus of Duke University. He testified at plaintiff's civil trial in this case that at approximately 5:00 a.m. on August 26th, he observed plaintiff's vehicle enter Science Drive. From his location in the hotel parking lot, he watched plaintiff's vehicle enter the Duke Faculty Club driveway, which serves as access for both the hotel and the Faculty Club. Plaintiff turned off the headlights and then continued to move down the driveway. Ten to fifteen minutes later, Detective Vick saw plaintiff's vehicle exit the driveway of the Faculty Club, turn right, and then head toward the rear of the hotel.

Detective Vick stated that he then became concerned because he knew the hotel had been having problems with theft. He therefore decided to angle his car in order to block plaintiff's exit when he returned from the rear of the hotel. After angling his vehicle, Detective Vick exited from it and stood at the front bumper, holding up his hands to indicate that plaintiff should stop. Plaintiff then sped up and drove around Detective Vick, almost striking him. A chase ensued. Detective Vick flashed his headlights and eventually drove beside plaintiff, who was speeding. He showed him his badge. During the chase, Detective Vick called for assistance from the Durham police. It was not until the police arrived and were flashing their blue lights that plaintiff pulled over on the side of the road.

After plaintiff stopped, Detective Vick approached the vehicle and observed wrought-iron patio furniture inside. He had a brief conversation with plaintiff about the furniture and then left the scene because his shift had ended. At that time, several Duke Public Safety officers, including Officer Stephen Russell, had arrived after hearing Detective Vick's call for assistance. Officer Russell testified at plain-

tiff's civil trial. He stated that Detective Vick described to him what had happened prior to his arrival.

Officer Russell looked inside plaintiff's vehicle with the aid of a flashlight and observed the bluish-gray, wrought-iron patio furniture, consisting of three chairs and one table. He questioned plaintiff, who told him he was taking the furniture to a friend's house. Officer Russell then radioed Officer Schwab, a fellow Duke Public Safety officer, and asked him to go to the Faculty Club to check for missing patio furniture. Officer Schwab did so and returned to the scene where he informed Officer Russell that no furniture appeared to be missing from the Faculty Club. Officer Russell then apologized to plaintiff for the delay and told him he was free to leave.

The next evening when Officer Russell returned to work, he learned that John LeBar of the Faculty Club had called in a larceny report that morning indicating that seven gray, wrought-iron patio chairs and two patio tables had been stolen from the Faculty Club the previous night. Officer Russell believed the description matched the furniture he had seen in plaintiff's vehicle. He therefore contacted his supervisor, who suggested that he seek a warrant. Officer Russell then went to the magistrate's office, presented his information, and obtained warrants for plaintiff's arrest for trespass and larceny. Officer Schwab and he then went to plaintiff's workplace at Duke Hospital and served the warrants on him. They allowed plaintiff to retrieve his personal items in their presence. Officer Russell then handcuffed plaintiff outside the building beside the Duke Public Safety vehicle and placed him in the vehicle. Officer Russell testified that it is in the officer's discretion whether to handcuff someone when making an arrest.

Plaintiff testified at his civil trial that at the time of the events at issue, he was employed as a radiologic technologist at Duke Hospital and worked the second shift on 25 August 1989. He arrived home from work at approximately midnight. He was having trouble sleeping due to pain in his leg, and at approximately 3:00 a.m. he decided to get up and load three patio chairs and a table in the back of his vehicle. He intended to take the furniture to the house of a friend.

Plaintiff first ate breakfast at a restaurant in Durham. He then drove on Route 751 through the Duke campus. At some point, he realized he was driving to his friend's old address. When he realized his mistake, he drove into the hotel entrance in order to turn his vehicle around. He backed his car into the Faculty Club driveway and noticed

a strange man, whom he identified at trial as Detective Vick, staring at him. He was concerned about this man and decided to drive toward the hotel rather than back onto the main road because he wanted to see if anyone was at the hotel. He testified that he did not exit his car at the hotel because he did not see anyone inside. He then drove toward the exit and saw that Detective Vick was blocking one lane of the exit.

Plaintiff admitted that he drove around Detective Vick and onto the main road. He remembered Detective Vick waving at him. He further stated that a chase ensued and that he was speeding. He also testified that Detective Vick flashed his headlights and showed him his badge but plaintiff did not pull over. Plaintiff stated that he was afraid of Detective Vick and wanted to stop his vehicle near overhead lights. Plaintiff admitted that he did not stop his car until he saw the Durham police vehicles' flashing lights.

Plaintiff testified that the Duke officers were polite to him and professional both at the traffic stop and later during his arrest. He testified that he had no reason to believe the officers had anything against him personally and that in his opinion they were "doing their job."

Plaintiff's criminal trial was held on 4 January 1990, and plaintiff pled "not guilty" to both the trespass and larceny charges. Detective Vick was not present and therefore did not testify. He was never subpoenaed by the District Attorney despite the fact that his name and address were known to the District Attorney. The State took a voluntary dismissal as to plaintiff's trespass charge at the close of the State's evidence. Plaintiff was found not guilty of the larceny charge after a trial on the merits.

On 25 February 1992 a civil trial, from which this appeal arises, was held on plaintiff's claims for malicious prosecution, intentional infliction of emotional distress, negligent infliction of emotional distress, and punitive damages, all allegedly arising from the events described above. In support of his emotional distress claim, plaintiff presented the expert testimony of Dr. Carolyn Burgess, a psychologist. Dr. Burgess stated that in 1991, almost two years after plaintiff's arrest, she saw plaintiff in a grocery store. He indicated that he was having some problems and wanted to schedule an appointment. Several months later plaintiff scheduled an appointment; this was the first time plaintiff had sought treatment. Dr. Burgess saw him several times. Plaintiff's initial complaint was the recent death of his brother,

who was an alcoholic and had died violently. After two or three sessions, plaintiff told Dr. Burgess about the arrest. Dr. Burgess characterized the arrest as one stressor in plaintiff's life, others being chronic leg pain and the death of his brother. Dr. Burgess testified that plaintiff was depressed and suffered from low esteem during the treatment, but she did not state that the depression was severe or disabling.

At the close of plaintiff's evidence, the trial court granted defendant's motions for directed verdict on the claims for intentional infliction of emotional distress and punitive damages. The court denied defendant's motions for directed verdict on the claims for malicious prosecution and negligent infliction of emotional distress. At the close of all the evidence, defendant renewed its motions for directed verdict on the claims for malicious prosecution and negligent infliction of emotional distress. The court denied the motions. On 28 February 1992, the jury returned verdicts for plaintiff on the claims for malicious prosecution and negligent infliction of emotional distress and awarded plaintiff $40,000 and $60,000 respectively for those claims.

On 9 March 1992 defendant filed a motion for judgment notwithstanding the verdict and a motion for a new trial. The court granted defendant's motion for judgment notwithstanding the verdict on the claim for negligent infliction of emotional distress but denied the motion on the malicious prosecution claim. The court further ordered that defendant would be entitled to a new trial if the Court of Appeals reversed its ruling in favor of defendant as a matter of law on the claim for negligent infliction of emotional distress. Defendant appealed the court's denial of its motion for a directed verdict on the malicious prosecution claim. Plaintiff appealed the court's ruling as to his claims for negligent infliction of emotional distress, intentional infliction of emotional distress, and punitive damages.

The Court of Appeals affirmed the trial court's denial of defendant's motion for directed verdict and motion for judgment notwithstanding the verdict on the claim for malicious prosecution. It also affirmed the trial court's granting of defendant's motion for judgment notwithstanding the verdict on the claim for negligent infliction of emotional distress, as well as the trial court's granting of defendant's motions for directed verdict on the claims for intentional infliction of emotional distress and punitive damages.

## BEST v. DUKE UNIVERSITY

[337 N.C. 742 (1994)]

Defendant sought a rehearing on the issue of the claim for malicious prosecution. The Court of Appeals denied the petition. On 3 March 1994, this Court allowed plaintiff's petition for discretionary review on his claims for negligent infliction of emotional distress and punitive damages. It also allowed defendant's petition for discretionary review on the claim for malicious prosecution.

Defendant argues that the Court of Appeals erred by affirming the trial court's denial of its motions for directed verdict, judgment notwithstanding the verdict, and new trial as to the issue of malicious prosecution. It contends that it was entitled to prevail as a matter of law on plaintiff's claim for malicious prosecution because there was insufficient evidence of lack of probable cause. We agree and accordingly reverse the Court of Appeals' decision on this issue.

To survive a motion for a directed verdict, the nonmoving party, plaintiff here, must present "sufficient evidence to sustain a jury verdict in [his] favor, . . . or to present a question for the jury." *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 323, 411 S.E.2d 133, 138 (1991) (citation omitted). The same standard is used in determining the sufficiency of the evidence for the motion for judgment notwithstanding the verdict because such a motion is essentially "a renewal of the movant's prerequisite motion for a directed verdict." *Abels v. Renfro Corp.*, 335 N.C. 209, 214, 436 S.E.2d 822, 825 (1993). The trial court must examine the evidence in a light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that may be drawn therefrom. If sufficient evidence exists to support each element of the nonmoving party's claim, the trial court should deny the motion for directed verdict and the motion for judgment notwithstanding the verdict. *Id.* at 214-15, 436 S.E.2d at 825.

[1] Plaintiff must establish four elements to support a malicious prosecution claim: (1) defendant initiated the earlier proceeding; (2) malice on the part of defendant in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of the plaintiff. *Jones v. Gwynne*, 312 N.C. 393, 397, 323 S.E.2d 9, 11 (1984). Here, plaintiff clearly established that he was tried criminally at defendant's initiative, that he was found not guilty of the larceny charge, and that the trespass charge was dismissed, thereby satisfying the first and fourth elements. The trial court determined that plaintiff also established malice and lack of probable cause and denied defendant's motions for directed verdict and judgment notwithstanding the verdict. The Court of Appeals

agreed with the trial court's view of the evidence. It relied on this Court's decision in *Pitts v. Village Inn Pizza, Inc.*, 296 N.C. 81, 249 S.E.2d 375 (1978), for the proposition that "[a] plaintiff makes a prima facie showing of the absence of probable cause by evidence of a voluntary dismissal of the prosecution by the State with no reason assigned for the dismissal." *Best v. Duke University*, 112 N.C. App. 548, 553, 436 S.E.2d 395, 399 (1993); *see Pitts*, 296 N.C. at 87, 249 S.E.2d at 379. The Court of Appeals concluded that because the reason for the State's dismissal of the trespass charge was not established, the voluntary dismissal of that charge was prima facie evidence of the lack of probable cause. We disagree with the Court of Appeals' application of *Pitts* to this case.

Where the claim is one for malicious prosecution, " '[p]robable cause . . . has been properly defined as the existence of such facts and circumstances, known to [the defendant] at the time, as would induce a reasonable man to commence a prosecution.' " *Cook v. Lanier*, 267 N.C. 166, 170, 147 S.E.2d 910, 914 (1966) (quoting *Morgan v. Stewart*, 144 N.C. 424, 430, 57 S.E. 149, 151 (1907). Whether probable cause exists is a mixed question of law and fact, but where the facts are admitted or established, the existence of probable cause is a question of law for the court. *Id.* at 171, 147 S.E.2d at 914.

[2] Here, the facts supporting probable cause were admitted and established. The uncontroverted evidence at trial showed that Detective Vick observed plaintiff acting suspiciously in and around the area of the Faculty Club during the early morning hours of 26 August 1989. He saw plaintiff turn his vehicle off the main road into the Faculty Club driveway and thereafter observed that plaintiff turned off the vehicle's headlights and then continued to move closer to the hotel. When Detective Vick tried to stop plaintiff as he exited, plaintiff sped around Detective Vick's vehicle and engaged in a chase. He did not stop his vehicle when Detective Vick pulled beside him, rolled down his window, and flashed his badge. Further, when plaintiff finally stopped his vehicle, all of the officers personally observed wrought-iron patio furniture in plaintiff's vehicle. Plaintiff admitted these facts at trial.

Further, it was established that John LeBar reported on the morning of 26 August 1989 that wrought-iron patio furniture, similar to those pieces in defendant's vehicle, was stolen from the Faculty Club between 10:00 p.m. on 25 August 1989 and 8:30 a.m. on 26 August 1989. Defendant was in the area where the theft occurred during the

**BEST v. DUKE UNIVERSITY**

[337 N.C. 742 (1994)]

period when it occurred. Plaintiff's explanation for the presence of the furniture in his car, that he was taking it to a friend's house, was weak considering the hour. Based on these undisputed facts and circumstances, which were known to defendant at the time of the commencement of the prosecution, we conclude that probable cause existed as a matter of law for plaintiff's arrest on the charges of trespass and larceny and for his subsequent prosecution for larceny. There was no question for the jury; these uncontroverted facts fully established that a reasonable person would be induced thereby to commence a prosecution against plaintiff. Thus, the issue of malicious prosecution should not have been submitted to the jury. The trial court therefore erred in denying defendant's motions for a directed verdict and judgment notwithstanding the verdict on that issue, and the Court of Appeals erred in affirming it.

Our decision in *Pitts* does not change our analysis or its outcome. The Court of Appeals determined, and plaintiff here argues, that *Pitts* requires that where the State takes a voluntary dismissal in a criminal prosecution without explanation, a prima facie showing of the absence of probable cause is made. We do not read *Pitts* so broadly. In *Pitts* the plaintiff had been charged with the crime of embezzlement. Prior to the criminal trial, the District Attorney voluntarily dismissed the action. The plaintiff then initiated a malicious prosecution action against the defendant. The defendant moved for summary judgment, which the trial court granted. This Court reversed the trial court's decision because there was a question of fact for the jury as to the existence of probable cause. *Pitts*, 296 N.C. at 87, 249 S.E.2d at 379.

[3] The distinguishing feature in *Pitts* was that there was no evidence before the trial court other than the magistrate's issuance of a warrant for plaintiff's arrest and the subsequent dismissal of the charge prior to the criminal trial. Here, uncontroverted evidence existed that was sufficient to establish probable cause as a matter of law. Where such is the case, evidence of the dismissal of a criminal charge by the District Attorney before the criminal trial is not sufficient evidence of a lack of probable cause to establish a question of fact for the jury in a malicious prosecution action. To the extent that *Pitts* may be read to suggest otherwise, it is disapproved.

We note as well that in *Pitts* the District Attorney had dismissed the sole charge against the plaintiff. *Id.* at 82, 249 S.E.2d at 376-77. Here, by contrast, the District Attorney dismissed only the trespass

charge but prosecuted plaintiff on the larceny charge. Even when viewed in the light most favorable to plaintiff, the dismissal of the trespass charge does not establish a prima facie showing of the absence of probable cause where the larceny charge based on the same events was fully tried.

[4] Plaintiff appeals the Court of Appeals' ruling that the trial court did not err in granting defendant's motion for judgment notwithstanding the verdict on the issue of negligent infliction of emotional distress. In order to take a claim for negligent infliction of emotional distress to the jury, the plaintiff must present evidence to support the following elements: "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . ., and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304, 395 S.E.2d 85, 97, *reh'g denied*, 327 N.C. 644, 399 S.E.2d 133 (1990). In a negligence action, a law enforcement officer "is held to the standard of care that a reasonably prudent person would exercise in the discharge of official duties of a like nature under like circumstances." *Bullins v. Schmidt*, 322 N.C. 580, 582, 369 S.E.2d 601, 603 (1988).

We conclude that there was no evidence here to raise an inference that defendant engaged in negligent conduct resulting in plaintiff's arrest. The evidence was uncontroverted that Officer Russell knew of the events that transpired between Detective Vick and plaintiff in the early morning of 26 August 1989 in the area of the Faculty Club. He personally observed patio furniture in plaintiff's vehicle. Based on these facts, he obtained a warrant for plaintiff's arrest when the theft of patio furniture was reported by John LeBar as occurring during the same time period as when plaintiff was observed in the vicinity of the Faculty Club. When Officer Russell went to plaintiff's place of work to make the arrest, he allowed plaintiff to retrieve personal items. He then handcuffed him outside and placed him in the Duke Public Safety vehicle. Officer Russell stated that handcuffing plaintiff was in his discretion, and given his knowledge that plaintiff had led Detective Vick on a chase, we cannot say that a reasonable person could conclude that a reasonably prudent law enforcement officer would have discharged these official duties differently. Further, as we have held, probable cause existed as a matter of law for plaintiff's arrest. We therefore agree with the Court of Appeals' conclusion that plaintiff failed to present sufficient evidence of negligent conduct to survive defendant's motion for judgment notwithstanding

**BEST v. DUKE UNIVERSITY**

[337 N.C. 742 (1994)]

the verdict. The trial court did not err in granting the motion nor did the Court of Appeals err in affirming this ruling.

[5] Plaintiff next argues that the Court of Appeals erred in affirming the trial court's granting of defendant's motion for directed verdict on the issue of punitive damages. To survive a motion for directed verdict on punitive damages, plaintiff must offer sufficient evidence to present a question for the jury as to whether defendant had actual malice in prosecuting plaintiff. Actual malice exists "only where the wrong is done willfully or under circumstances of rudeness, oppression or in a manner which evidences a reckless and wanton disregard of the plaintiff's rights." *United Laboratories, Inc. v. Kuykendall*, 335 N.C. 183, 191, 437 S.E.2d 374, 379 (1993) (quoting *Hardy v. Toler*, 288 N.C. 303, 306-07, 218 S.E.2d 342, 345 (1975)); *see also Williams v. Boylan-Pearce, Inc.*, 69 N.C. App. 315, 319, 317 S.E.2d 17, 20 (1984) (actual malice conveys sense of "ill-will, spite, or desire for revenge"), *aff'd per curiam*, 313 N.C. 321, 327 S.E.2d 870 (1985). We hold that the evidence of the officers' conduct was inadequate to present a question of actual malice for the jury. Probable cause for plaintiff's arrest and prosecution existed based on uncontroverted facts. Further, plaintiff testified that the officers were polite and professional to him at his stop and during his arrest. The trial court therefore did not err in granting defendant's motion for a directed verdict on the issue of punitive damages. We affirm the Court of Appeals' ruling on this issue.

Accordingly, we affirm that part of the Court of Appeals' decision that affirmed the trial court's granting of defendant's motion for directed verdict on the claim for punitive damages and the trial court's granting of defendant's motion for judgment notwithstanding the verdict on the claim for negligent infliction of emotional distress. We reverse that part of the Court of Appeals' decision that affirmed the trial court's denial of defendant's motion for directed verdict and motion for judgment notwithstanding the verdict on the claim for malicious prosecution. The case is remanded to the Court of Appeals for further remand to the Superior Court, Durham County, for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Justice FRYE dissenting in part.

The majority concludes that the trial court erred in denying defendant's motions for directed verdict and judgment notwithstand-

ing the verdict as to plaintiff's malicious prosecution claim, holding that probable cause existed as a matter of law for plaintiff's arrest on the charges of trespass and larceny. I believe that the evidence in this case, viewed properly, presented a question of fact for the jury as to the existence of probable cause and, therefore, I must dissent from that portion of the majority opinion which takes this issue away from the jury.

In ruling on a motion for directed verdict or a motion for judgment notwithstanding the verdict, "the trial court must examine all of the evidence in a light most favorable to the nonmoving party, and the nonmoving party must be given the benefit of all reasonable inferences that may be drawn from that evidence." *Abels v. Renfro Corp.*, 335 N.C. 209, 214-15, 436 S.E.2d 822, 825 (1993). Furthermore, all conflicts in the evidence must be resolved in the nonmoving party's favor. *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988). The question presented by a motion for directed verdict is whether the evidence is sufficient to entitle the nonmovant to have the jury decide the issue in question. *Id.* It is for the jury to determine whether to believe all, part, or none of a witness' testimony.

Without unnecessary duplication, the evidence taken in the light most favorable to plaintiff, the nonmoving party, shows that plaintiff drove into the Faculty Club driveway to turn around and was in the driveway less than a minute. Plaintiff informed the officers who stopped him that he was taking the furniture in his automobile to a friend's house. In addition, plaintiff told Officer Russell he was welcome to look inside his automobile and opened the automobile door for him; however, Officer Russell appeared not to want to look and plaintiff closed the door. Russell told plaintiff that he recognized him as a Duke University Medical Center employee.

Russell looked "quite a few times" at the furniture in plaintiff's automobile, shining his flashlight through the windows of the automobile. He was checking the furniture for a Duke University identification sticker because he believed there would be a Duke sticker on the table had it belonged to the Faculty Club. Officer Russell found no Duke University sticker on the furniture. During the course of the stop, neither Officer Russell nor any of the other officers removed the furniture from the automobile to look at it. Officer Russell sent an officer to the Faculty Club, and when the officer reported that he saw

**BEST v. DUKE UNIVERSITY**

[337 N.C. 742 (1994)]

nothing unusual at the Club and no furniture appeared to be missing, Russell allowed plaintiff to leave.

When Officer Russell returned to work the next evening, he learned that John LeBar of the Faculty Club had called in a larceny report that morning indicating that "two tables, seven chairs, all gray in color" had been taken from the Faculty Club the previous night. Without contacting John LeBar to verify the report, Russell obtained warrants charging plaintiff with larceny of the furniture and trespass upon the premises of Duke University Faculty Club. Furthermore, Russell obtained these warrants without contacting plaintiff to hear his explanation and without inquiry as to the present location of the table and three chairs he had seen earlier in plaintiff's automobile. In addition, Russell did not go to the Faculty Club at any time between the stop and arrest of plaintiff.

The question before the Court on defendant's motions for directed verdict and judgment notwithstanding the verdict on the issue of lack of probable cause is not whether the evidence would support a finding of probable cause, but whether the evidence compels such a finding as a matter of law. After considering the evidence in this case, and weighing the credibility of the plaintiff and the officers, twelve jurors found that defendant instituted criminal charges against the plaintiff with malice and without probable cause. While there is much evidence that would support a contrary finding by a jury, it does not compel such a finding. Accordingly, the trial court was correct in denying defendant's motion for directed verdict, allowing the issue of lack of probable cause to go to the jury, and denying defendant's motion for judgment notwithstanding the verdict on this issue.

Chief Justice Exum and Justice Mitchell join in this dissenting opinion.