DIXON, ODOM & COMPANY v. DAVID L. SLEDGE AND SLEDGE AND TRIVETTE, A GENERAL PARTNERSHIP

No. 8118SC1276

(Filed 2 November 1982)

1. **Partnership § 9— withdrawal of partner—division of fees from former clients —validity of agreement**

   A contract providing for a division of fees which a partner withdrawing from a partnership of accountants would obtain from "former clients" of the partnership was not ambiguous and sufficiently described the intentions of the parties.

2. **Contracts § 7.2— withdrawal of partner—agreement for division of fees—no covenant not to compete**

   An agreement between a partnership of accountants and a withdrawing partner setting forth the obligations of the parties with respect to the payment of salary, repurchase of the withdrawing partner's interest, cancellation of the withdrawing partner's debt to the partnership and a division of fees which the withdrawing partner obtained from "former clients" of the partnership did not constitute a covenant not to compete and thus was not governed by the rules applicable to such covenants.

3. **Partnership § 9— withdrawal of partner—division of fees in lieu of covenant not to compete—consideration**

   An agreement between a partnership of accountants and a withdrawing partner setting forth the obligations of the parties with respect to the payment of salary, repurchase of the withdrawing partner's interest, cancellation of the withdrawing partner's debt to the partnership, and a division of fees which the withdrawing partner obtained from former clients of the partnership in lieu of a covenant not to compete contained in the original partnership agreement was supported by consideration.

4. **Accountants § 1; Partnership § 9— agreement for division of fees, examination of records—no unlawful disclosure of tax information—no violation of ethics code**

   An agreement between a partnership of accountants and a withdrawing partner providing for a division of fees obtained by the withdrawing partner from "former clients" of the partnership and requiring the withdrawing partner to provide the partnership with a list of the former partnership clients served by him and the fees earned from the former clients and to allow his records to be examined by a member of the partnership did not violate statutes prohibiting the disclosure of any information furnished in connection with the preparation of a tax return, I.R.C. § 7216 and G.S. 75-28. Nor did the disclosure required by the agreement violate provisions of the CPA Code of Ethics prohibiting the disclosure of any confidential information obtained in the course of a professional engagement without the client's consent and prohibiting the payment or acceptance of a commission for client referrals.

**5. Specific Performance § 3— inadequate remedy at law**

      Plaintiff partnership was entitled to specific performance of an agreement with defendant withdrawing partner providing for the division of fees obtained by defendant from former clients of the partnership where defendant had refused to comply with the agreement and had stated that he will not comply in the future, and the only way for plaintiff to determine the sums due to it was to obtain the list of clients called for under the agreement.

**6. Costs § 4— deposition expenses as part of costs**

      Deposition expenses may be taxed as part of the costs in the discretion of the court pursuant to G.S. 6-20.

APPEAL by plaintiff and defendants from *Albright, Judge.* Judgment entered 25 August 1981 in Superior Court, GUILFORD County. Heard in the Court of Appeals 16 September 1982.

The record reveals the following facts. In 1974, defendant, David L. Sledge, signed a partnership agreement with plaintiff, the accounting firm of Dixon, Odom & Company. On 7 January 1977, defendant Sledge gave notice of his withdrawal from the partnership and the plaintiff accepted his withdrawal on 8 January 1977. On 18 January 1977, plaintiff and defendant Sledge signed an agreement defining the respective rights, duties and responsibilities of each to the other in connection with Sledge's withdrawal from the firm.

In the agreement, plaintiff agreed to pay Sledge a salary through April 1977 and to cancel all debts due to the partnership from the defendant Sledge. The plaintiff also promised to pay to Sledge the sum of $12,000 by yearly payments of $1,200 through 1986 with 6% interest. (The plaintiff had the right to prepay the balance due in whole or in part.) The defendant agreed to provide to the plaintiff a list of clients anticipated to discontinue using plaintiff's professional services and become Sledge's clients. As for the defendant's obligations, the agreement contained the following:

    The Withdrawing Partner agrees to pay to the Partnership fifty percent (50%) of all fees earned by him, either directly or indirectly as a partner or employee, from clients who were formerly clients of the Partnership at any time after January 17, 1975, subject to the following terms and conditions:

(a) The Withdrawing Partner shall not pay to the Partnership any part of fees earned by him after January 17, 1987, and

(b) With respect to each client served by the Withdrawing Partner, the Withdrawing Partner shall not pay any part of fees earned by him from that client after he has paid to the Partnership fifty percent (50%) of fees earned by him from that client for a period of three (3) years, and

(c) With respect to each client served by the Withdrawing Partner in a bookkeeping capacity, the Withdrawing Partner shall not pay any part of fees earned by him from that client after he has paid one hundred fifty percent (150%) of the amount of fees earned by the Partnership from that client during its last year of service to that client, and

(d) The Withdrawing Partner shall give to the Partnership on November 15, 1977 and annually thereafter until November 15, 1987 a list of former clients of the Partnership which he has served directly or indirectly since he ceased to be a partner of the Partnership and since his last similar report, together with a list of the amount of fees earned by him from each such client and the amount of fees received by him from each client, excluding any clients which sub-parts (a), (b) or (c) of this provision shall eliminate from the list, together with his payment of 50% of the fees received by him directly or indirectly, and

. . .

(g) The Withdrawing Partner shall maintain records adequate to provide the information required by this provision and shall allow his records to be examined by a representative of the Partnership for purposes of verification at any reasonable time and place.

Even though Sledge denies having complied with this agreement during 1977, he did supply a list of clients to the plaintiff and pay $12,466.30 to the plaintiff. Also during 1977, plaintiff paid, and defendant Sledge accepted $9,791.67 in salary and $1,823.00 under the provision to pay $12,000 in yearly payments. Plaintiff also cancelled defendant Sledge's debt instruments. Again in 1978, Sledge supplied the plaintiff with a list of clients

and paid $7,341.39 to plaintiff and the plaintiff made its annual payment to Sledge. In 1979, Sledge failed to provide a list of clients, but paid $6,478 to plaintiff and the plaintiff fulfilled its financial obligation to Sledge. During 1980, Sledge refused to give plaintiff a list of clients and did not pay any money to plaintiff. Sledge also informed the plaintiff that he did not intend to comply with the agreement.

Plaintiff sued for an accounting of Sledge's earnings and for specific performance of the agreement and moved for summary judgment. The court granted summary judgment for the plaintiff and ordered Sledge to perform specifically his obligations under the agreement and to provide plaintiff with an accounting of earnings from 18 January 1977 to 15 November 1980 from plaintiff's former clients. The order also taxed costs of the action, including deposition expenses, against defendant Sledge. Defendants appealed. The court later amended the partial summary judgment to delete the portion taxing deposition expenses to defendant Sledge. Both plaintiff and defendants appealed the amended judgment.

*Wyatt, Early, Harris, Wheeler & Hauser by William E. Wheeler for the plaintiff, appellee.*

*Robert A. Brinson for the defendants, appellants.*

HEDRICK, Judge.

[1] Defendants first contend that summary judgment was improperly granted for the plaintiff because a genuine issue of material fact exists as to what constitutes a "former client" under the agreement. Defendants argue the term "former client" is ambiguous and does not describe the intentions of the contracting parties. One interpretation of "former clients" given by the defendants is that one of plaintiff's clients could change to a third, unrelated accounting firm and later change to defendant Sledge's firm. This, argues the defendants, was not a situation contemplated by the contracting parties when they entered into the agreement. Yet, a likely occurrence would come about where defendants advised potential clients, who were also former clients of the plaintiff, to use a third firm before moving their business to defendants in order to circumvent the agreement between plaintiff and defendants.

Nonetheless, this court need not entertain all the possible interpretations of "former clients" in order to decide this case. Where the provisions of a contract are plainly set out, the court is not free to disregard them and a party may not contend for a different interpretation on the ground that it does not truly express the intent of the parties. *Taylor v. Gibbs*, 268 N.C. 363, 150 S.E. 2d 506 (1966). We find the language of this agreement, made between professional men, who are deemed capable of guarding their own interest and remaining free from compulsion, is clear and unambiguous on its face. This finding obviates defendants' argument that "former clients" is not what the parties meant at the time of contracting. We note that the agreement contains seven subparagraphs below the provision setting out the obligations concerning "former clients." Furthermore, plaintiff's "Exhibit F" shows that defendant Sledge suggested that "fees be paid to cover *present or future clients* who become my client during a ten year period to end January 10, 1987." (Emphasis added.) Plaintiff's affidavits and exhibits further demonstrate that the original partnership agreement signed by defendant Sledge in 1974 contained certain covenants not to compete and that the agreement in dispute here was adopted in lieu of the original partnership agreement *limiting a withdrawing partner's right to compete with the plaintiff partnership.*

[2] Defendants contend that this agreement was an unreasonable and unenforceable covenant not to compete. We do not agree with defendants and find this was not a covenant not to compete. The contract simply describes the obligations of the parties with regard to payment of salary, repurchasing of Sledge's partnership interest, cancellation of Sledge's debt and division of fees which Sledge obtained from "former clients." The agreement did not restrict the area in which Sledge could practice accounting nor did it prohibit him from serving former clients of the plaintiff. By paying a portion of his fees to plaintiff, defendant contracted out of the covenant not to compete as contained in the partnership agreement. The subsequent agreement was simply a *contract to settle the affairs of the parties concerned*, and it was not a covenant not to compete. Therefore, the rules governing covenants not to compete do not apply.

[3] Defendants also contend the agreement fails for lack of consideration. We disagree. Both parties signed the agreement and

defendant Sledge received the right to compete with the plaintiff in High Point, an area that would have been off limits under the original partnership agreement. Likewise, plaintiff gave up the right to prevent defendant Sledge from competing in High Point and dissolved other obligations Sledge had under the 1974 partnership agreement. We find this adequate consideration as a matter of law.

[4] Defendants next argue that any disclosure of information under the agreement violates I.R.C. § 7216 (1954) or N.C.G.S. § 75-28. Each prohibits disclosure of any information furnished in connection with the preparation of a tax return. However, the agreement only calls for a list of defendants' clients, defendants' fees and reasonable examination of records for purposes of verification. The information Sledge agreed to disclose was not information furnished by a taxpayer in connection with the preparation of a tax return. Instead, it was information from defendants' own books and financial records. Information to be provided under the agreement did not have to denote a client as one employing defendants to prepare tax returns nor in any way divulge tax return information. A list of defendants' clients, fees and inspection of their bookkeeping records, especially where a withdrawing partner is buying out of a former agreement, has nothing to do with disclosure of confidential tax return information as controlled by these statutes. We find defendants' argument without merit.

Defendants also advance the argument that disclosures required by the agreement violate Section .0204 and Section .0302 of the Code of Ethics of the North Carolina State Board of Certified Public Accountants. Again, the defendants' position is not well founded. Section .0204(a) states that a CPA "shall not disclose any confidential information obtained in the course of a professional engagement except with the consent of the client." Section .0302 bars the payment or acceptance of a commission for client referrals. Neither section applies to the facts at hand. First, the information for disclosure as required by the agreement is not confidential client information. It is simply a listing of clients and fees. Second, plaintiff is not referring clients to defendants and no commissions are involved. By paying plaintiff a percentage of his fees obtained from former clients of plaintiff, the defendants are simply purchasing the right to compete with plaintiff in a certain

geographic area, which was prohibited by the original partnership agreement. Therefore, we find these provisions of the CPA Code of Ethics inapplicable.

[5] In Assignment of Error No. 6, defendants contend plaintiff is not entitled to specific performance because there is an adequate remedy at law. Yet, defendants have refused to comply with the agreement and have said they will not comply in the future. The only way for plaintiff to determine the sums, if any, due to it is to obtain the list called for under the agreement. Any damages could not be ascertained without delivery of the client list. Therefore, the trial court properly granted specific performance to the plaintiff.

[6] The final question before this court is the propriety of the trial judge's amendment to the order deleting deposition expenses from the costs charged to the defendants or because "[c]ourt costs do not under applicable State law include deposition expenses and therefore are not properly taxed as part of the costs of this action. . . ." The applicable statute is G.S. § 6-20 which reads: "In other actions, costs may be allowed or not, in the discretion of the court, unless otherwise provided by law." Where the court has taxed costs in a discretionary manner its decision is not reviewable. *Hoskins v. Hoskins,* 259 N.C. 704, 131 S.E. 2d 326 (1963). However, in the instant case the trial court ruled as a matter of law to disallow the deposition expenses. As a general rule, recoverable costs may include deposition expenses unless it appears that the depositions were unnecessary. 20 Am. Jur. 2d *Costs* § 56 (1965). Even though deposition expenses do not appear expressly in the statutes they may be considered as part of "costs" and taxed in the trial court's discretion. Therefore, we remand the issue of costs to be determined at the trial court's discretion.

Summary judgment for the plaintiff is affirmed. The case is remanded for a determination of taxing of costs.

Affirmed in part; remanded in part.

Judges MARTIN (R. M.) and HILL concur.