(704 P.2d 381)

No. 56,106

GENE W. FRANCIS, C.P.A., and RICHARD W. MCKEE, C.P.A., d/b/a
FRANCIS, MCKEE & COMPANY, a partnership, *Appellants*, v.
RANDY K. SCHLOTFELDT, *Appellee.*

Opinion filed March 7, 1985.

*Jack W. Shultz,* of Shultz & Associates, P.A., of Dodge City, for appellants.

*David L. Patton,* of Patton & Kerbs, of Dodge City, for appellee.

Before SWINEHART, P.J., ABBOTT and PARKS, JJ.

PARKS, J.: This action was brought by Gene W. Francis and Richard W. McKee, partners in an accounting firm, against Randy K. Schlotfeldt, a third withdrawing partner, to enforce provisions of their partnership agreement. The trial court held the provisions in question to be an unenforceable restrictive covenant and entered judgment for the defendant. Plaintiffs appeal.

The issue presented on appeal is whether the trial court erred

in holding that section 7-9 of the partnership agreement was unenforceable.

It is the general policy of the law to permit mentally competent parties to arrange their own contracts and fashion their own remedies when no fraud or overreaching is practiced. *Belger Cartage Serv., Inc. v. Holland Constr. Co.*, 224 Kan. 320, 327, 582 P.2d 1111 (1978). To balance the interests favoring freedom to contract and those opposing restraints of trade, our Supreme Court has held that anticompetition covenants, ancillary to a contract of employment freely entered into with full knowledge, are valid and enforceable if the restraint is reasonable under the facts and circumstances of the particular case. *Eastern Distributing Co., Inc. v. Flynn*, 222 Kan. 666, Syl. ¶ 1, 567 P.2d 1371 (1977).

Section 7-9 of the partnership agreement states in pertinent part as follows:

". . . if a partner withdraws from the partnership but intends to and does continue the practice of public accounting, either individually or in any arrangement other than as a part of this partnership, it is recognized that such withdrawing partner may take with him certain clients of the partnership but that the withdrawing partner shall compensate the remaining active partners for such asset as hereinafter provided. For purposes of determining the business value of each client of the partnership, the partners agree that the valuation of such client shall be the higher of fifty percent (50%) of the preceding thirty-six (36) months' billing, or one hundred fifty percent (150%) of the total billings of the past twelve (12) months, or one hundred fifty percent (150%) of an annualized fee of a new client not serviced for a complete year."

Section 7-9 is not an ordinary covenant not to compete. It does not prohibit defendant from practicing his profession within either a certain time or place. Section 7-9 places no restrictions on the right of the withdrawing partner to accept work from former clients or to even actively solicit their business. Instead, the provision recognizes the probability that clients formerly served by a certain accountant at the firm will want to continue to deal with him even after he leaves the firm. Thus, rather than attempt to prohibit such a choice, the agreement requires the withdrawing partner to compensate the firm for lost business. The contract sets out a formula for calculating the agreed worth of any client who does accompany a withdrawing partner and that partner is required to pay the firm for its loss.

Because section 7-9 does not directly prohibit competition, plaintiffs contend that the district court erred in applying the

reasonableness test reserved for covenants which restrain trade. They contend that this agreement should have been enforced according to its terms as an ordinary contract without inquiry into its fairness. We agree.

In *Dixon, Odom & Co. v. Sledge*, 59 N.C. App. 280, 296 S.E.2d 512 (1982), the original partnership agreement between partners in an accounting firm included covenants not to compete. However, when one of the partners decided to withdraw from the firm, a new agreement was drawn in lieu of the provisions regarding withdrawal placed in the original contract. This agreement provided that the withdrawing partner would have to provide the firm with a list of all clients he would serve in future years who formerly patronized the firm and that he would pay 50% of the fees earned from those former firm clients back to the firm. The North Carolina court held that this was not a covenant not to compete, stating as follows:

"Defendants contend that this agreement was an unreasonable and unenforceable covenant not to compete. We do not agree with defendants and find this was not a covenant not to compete. The contract simply describes the obligations of the parties with regard to payment of salary, repurchasing of Sledge's partnership interest, cancellation of Sledge's debt and division of fees which Sledge obtained from 'former clients.' The agreement did not restrict the area in which Sledge could practice accounting nor did it prohibit him from serving former clients of the plaintiff. By paying a portion of his fees to plaintiff, defendant contracted out of the covenant not to compete as contained in the partnership agreement. The subsequent agreement was simply a contract to settle the affairs of the parties concerned, and it was not a covenant not to compete. Therefore, the rules governing covenants not to compete do not apply." *Dixon*, 59 N.C. App. at 284.

The *Dixon* case is closely analogous to this one. In both instances, the provision requiring the withdrawing partner to reimburse the firm was negotiated by parties with similar bargaining power and with the benefit of counsel. In this case, the district court specifically found no evidence of fraud or overreaching. In addition, the evidence indicates that the provision was agreed to after defendant refused to accept a partnership agreement containing a covenant not to compete. Thus, like *Dixon*, the agreement to pay a portion of future fees to the firm was negotiated without significant disparity in bargaining power and as a specific rejection of an outright prohibition against competition. The public's right to choose an accountant is un-

impaired by section 7-9 and no temporal or geographic restrictions are placed on defendant's right to practice his trade.

We conclude that the partnership agreement in this case does not restrain trade and should be enforced according to its terms in the same manner as any unambiguous contract.

Judgment is reversed and the case is remanded to the district court with directions to enforce the agreement according to its terms.