PHILIP ENGEL, J. CHRIS ASCHENBECK, SABINO OLIVAS III, KEITH P. BELL, CARL ROSENTHAL, BURTON H. ARMSTRONG, GLENN C. COLE, DONALD E. RUGGENBERG, ROSS E. WRIGHT, ALLEN E. SUDERMAN, CARL R. SWENSON, VICTOR COHEN, LEWIS P. GACK, GERALD I. GLUNTS, CHARLES M. GOODMAN, BERTRUM KELLEM, ROBERT M. LEAVY, FRANK LEVENSON, BERNARD E. PORTER, JEREMIAH SUNDELL, E. J. PASSEY, GERALD T. STACK, MARVIN I. BESKIN, DAVID L. FARKAS, ERWIN J. KOHN, JERALD L. ROTHCHILD, HENRY L. WILSON, ALFRED B. YABLON, NORBERT S. BICK, M. DAVID FREDMAN, GEORGE D. SCHATEL, LAWRENCE E. SCHNEIDER, DEAN W. ARNOLD, JOHN A. BAILEY, WILLIAM E. BOCKMAN, CLINTON L. BULKLEY, DONALD L. FARMER, ROBERT L. KUTCHERA, DONALD F. McKENZIE, RALPH E. NANNINGA, EDWIN L. OLSEN, JAMES H. PALSMEIER, HERBERT J. STELZER, LARRY L. AXLINE, EDMUND W. BAILEY, JOHN W. BROPHY, PATRICK D. FLAHARTY, LYNN HILL, RICHARD MULBERRY, DAVID E. VINK, L. BEN WEAVER, ROBERT F. ABRESCH, JOSEPH A. BABICH, ROBERT E. BERGIN, JACK E. BLUMENTHAL, DAVID S. BRESSLER, CHARLES A. CLARE, ROBERT M. COFFMAN, WILLIAM DENT, LYNDA S. DREILING, STEPHEN A. DUREE, JAMES H. FELDHAKE, WILLIAM H. HEASTON, CLARENCE J. JONAS, LYNN LAWRENCE, BYRON A. LAX, ELDON LEWIS, REX MARTIN, RICHARD MOORE, BERT SCHIRESON, RICHARD SKINNER, MIKE F. TAYLOR, HARVEY FRANK, STANLEY N. FREEDMAN, GERALD E. JACKSON, SIDNEY M. LEVINE, VICTOR E. MATHURIN, LAWRENCE W. BLAKE, JR., RICHARD O. BUTTON, ANDREW A. LAUE, JOSEPH G. TRINDLE, DENNIS W. HANSON,

WILLIAM D. KIRKPATRICK, MAURICE MORTON, PHILIP R. AUGUSTYN, DONALD C. FREUND, ROBERT SPELLMEYER, CHARLES FRUITHANDLER, JOSEPH A. McKEEVER, LOWELL G. NUSSBAUM, C. HERBERT COX, EDWIN B. GOFF, STUART H. HARDEN, GEORGE A. SILVA, ALLEN ROSS, KENNETH R. BRAUN, ROBERT A. PFEIFER, R. MIKE HILL, E. C. MOORE, STEVEN W. RITZWOLLER, LEON E. BERGMAN, NORMAN E. KLEIN, LEROI MILLS, ROBERT R. MYERS, WAYNE J. WEBER, IRVING J. STEINBERG, CHARLES B. WILCOXEN, STANLEY C. HENSLEE, EARLE V. KING, HAROLD L. KING, EVAN J. McDOWELL, VERLON L. McKAY, GLYNN SHAW, SHELDON A. BERNSTEIN, DANA J. BRENNER, WILLIAM DUBEY, MELVIN H. FONNESBECK, JACK J. GLUSKIN, FREDERICK A. HANCOCK, PAUL D. MAHAN, FREDERICK MOSCARITO, ARNOLD TWERSKY, CHARLES I. CORP, RICHARD L. DOUGHERTY, WILLIAM R. STEELE, WILBERT McCAULLEY, HAROLD A. SEDACCA, ALAN L. SHERR, MELVIN C. MYERS, J. WILLIAM ROBERT, JOHN E. HARRINGTON, MARK D. JOYCE, ROBERT J. LOBERG, JOHN A. McCARTHY, JEROME J. TUCKNER, ROBERT C. WISEN, KLAREN ALEXANDER, IRVING BAUMWALD, MORTON BERGER, ARNOLD I. BINSTOCK, THOMAS J. BOTTIGLIERI, JOHN J. BROSNAN, HAROLD CHAFITZ, ALBERT M. DeBICCARI, MELVIN FEIT, BRUCE D. GAREN, JAY H. HABER, MARTIN HELLER, STEPHEN S. KUTZ, FRANK MASTROIANNI, JAMES P. McCAFFERY, MORTON NATKIN, BERT E. PHILLIPS, RALPH J. POSES, ARTHUR ROGOVIN, SEYMOUR L. SCHARF, RONALD W. SCHEIL, EARL D. SUSSMAN, KEVIN J. TIERNAN, HOWARD E. EHLER, ROGER L. HAYNIE, DAVID J. McCARROLL, CURTIS E. REBHAN, GEORGE V. ALEXANDER, H. DeVERE McKAY, ALVIN ABRAMSON, ALDEN B. AWERKAMP, DAVID E. DATESMAN, JOHN A. EILERS, ROBERT C. FRAZER, ALBERT FRIEDMAN, JAMES D. GOODNIGHT, ALLEN J. MARSH, MICHAEL P. CERISANO, JOHN M. DELANEY, JAMES P. HANNON, MICHAEL A. PINTO, ROBERT A. WILEY, GREGORY R. ANDERSON, DENNIS R. BROWN, DON L. GREUBEL, DON A. JOHANSEN, DWIGHT E. McFADDIN, FRANK H. GARDNER,

LOWELL J. ROBISON, J. NEWELL JACKSON, ROBERT L. SIMS, HOWARD C. KASTLER, ARMIN E. RUUD, L. WAYNE STANLEY, JACK E. NICHOLS, FRANK BRADHORST, WAYNE. J. GRACE, ROBERT M. KOLB, ARTHUR L. McWILLIAMS, MARK E. MERSMANN, SAM SALNIKER, DON M. SCHUESSLER, ROGER D. BROWN, J. WILL LEWIS, FRANK C. NIELSON, PHILLIP E. OSBORNE, DENNIS A. PARKER, RAY O. WESTERGARD, LARRY R. NUTT, ELMER C. SELIM, R. BARNES WHITLOCK, MICHAEL J. BURNS, BRYAN D. BURR, RUDY G. CROCE, HOWARD C. LEWIS, BARRY W. McCANDLESS, HARVEY E. MULLEN, WILBUR H. STEVENS, DARRELL BLEDSOE, DONALD L. FERRELL, LEONARD D. HILT, CLAYTON C. McMURRAY, DONALD L. NELSON, JERE K. NOE, JOHN F. SANDERS, JOHN E. WENDLING, HENRY G. AMADO, STEVEN E. CLARK, HARRY G. KARCHMER, DON RADAKOVICH, CHRIS V. KEMENDO, JR., ED TOMLINS, JR., ROBERT B. AIREY, JR., EARL L. BECRAFT, JR., HARVEY J. BERGER, MARGARET DeBOE, HAROLD R. EVANS, IRVING HOFFMAN, FRANCIS R. ISBELL, MARC NEEDLEMAN, JULIUS SANDLER, HERSHEL D. SOSNOFF, JOSEPH R. WARZECHA, GERHARD S. WOLFF, WILLIAM T. CARNAHAN, DAVID R. KENT, BILL L. ALLEN, ROBERT D. BAKER, ROY F. BRUNGARDT, ROBERT W. BURDGE, LEE I. CROPP, GARY W. DEAN, MARK DICK, TERRY O. EVERSON, BOBBY J. JOHNSON, DONALD L. JOHNSON, CHARLES F. KING, HERMAN J. KOCOUR, STANLEY J. KRAUS, WILLIAM L. LUCAS, NOLAN O. LUKE, HARRY O. LYTLE, JR., JOHN MARSTALL, KENNETH MEREDITH, HOMER L. MOORE, BRUCE MOORMAN, ROBERT M. QUINN, LARRY E. SOICE, BEN A. SPENCER, DONALD VANNOY, dba ELMER FOX, WESTHEIMER & CO., a Partnership, Appellants and Cross-Respondents, v. WILLIAM ROBERT ERNST, Respondent and Cross-Appellant.

No. 16497

September 4, 1986                    724 P.2d 215

*Jimmerson & Combs,* Las Vegas, for Appellants and Cross-Respondents.

*Hawkins & Sharp,* Reno, for Respondent and Cross-Appellant.

## OPINION

*Per Curiam:*

This is an appeal from a judgment whereby the district court determined that a restrictive covenant existed which was violative of Nevada's public policy. As a result, the covenant was deemed unenforceable as a penalty provision. Because we agree with Fox that the clause existed as a valid liquidated damage provision, we reverse and remand for further proceedings consistent with this opinion.

### The Facts

Elmer Fox, Westheimer & Co. (Fox) was a nationally certified accounting firm with offices around the country. Fox's principal place of business was Denver, Colorado. William Ernst (a certified public accountant) joined Fox in 1970 and was an auditor in the Las Vegas office. Ernst was promoted to office manager in 1972. At that time, Ernst signed an agreement stating that he would refrain from serving any Fox clients for a two-year period should he choose to leave Fox's employ. In June, 1974, Ernst became a partner of Fox and signed a partnership agreement. Article 17 of the agreement was similar to the provision that Ernst had agreed to in 1972. Over the years, Ernst signed similar amended agreements. In November, 1977, Ernst voiced concerns over the enforceability of article 17. By the following month, Ernst was actively seeking new employment. In January, 1978, Ernst left Fox without providing the requisite sixty (60) days notice. Before leaving Fox's employ, Ernst flew to the Denver headquarters and implored the managing partner to waive article 17. Fox declined to do so.

Ernst joined the accounting firm of Harris, Kerr, Forster & Co. (Harris) and immediately appropriated a number of Fox's clients. Evidence revealed that several of these clients had been solicited by Ernst before he left Fox's employ. Additionally, Ernst had removed client files from Fox without its permission.

Pursuant to article 17 of the partnership agreement, Fox calculated the damages caused by Ernst's conduct. Because the damages suffered in such a situation are difficult to ascertain, article 17 provided that the withdrawing partner pay an amount equivalent to the fees which would have been earned by the firm (from the client) during an average one-year period. This amount was calculated by averaging the annual fees collected over a prior three-year period. As tallied, these damages totaled $72,152.00. Against this sum, Fox offered to offset Ernst's capital account which totaled $8,554.85. Thus, Fox demanded a net total amount of $63,597.15. Ernst refused to pay and initially asserted that he

did not understand the manner of calculations. Ernst later asserted that article 17 was unenforceable as a violation of Nevada's public policy. A lawsuit was initiated and, after a bench trial, the district court determined that article 17 was a restrictive covenant violative of Nevada's public policy and was unenforceable as a penalty provision.

Both parties filed post-trial motions. Fox sought an amended judgment or a new trial. Ernst sought an award of treble damages, attorney's fees and prejudgment interest. Other than amending the judgment to deem article 17 unreasonable, all other requests were denied. Fox appealed and Ernst cross-appealed. The central issue before us is whether article 17 was an enforceable contractual provision. In order to address this issue, we must first determine whether the district court's application of Nevada law was appropriate.

## *Choice of Law*

Article 32 of Fox's partnership agreement directed that "[a]ll questions relating to the interpretation of this agreement" shall be determined by application of Colorado law. It is well settled that parties are permitted to select the law that will govern the validity and effect of their contract. *E.g.,* Sievers v. Diversified Mtg. Investors, 95 Nev. 811, 815, 603 P.2d 270, 273 (1979). The parties are required, however, to act in good faith and not for the purpose of evading the law of the real situs of the contract. Additionally, the situs must have a substantial relationship to the transaction and the agreement must not be contrary to the public policy of the forum. *Id.*

Here, there was no evidence to show that Fox acted in bad faith by attempting to evade the laws of Nevada. Fox was a national accounting firm with its partners located in different offices around the country. It is understandable that Fox would attempt to choose a set of laws to govern the partnership relationship; otherwise, if Fox were required to satisfy the nuances of various state's laws, there would be non-uniform enforcement of its partnership agreements.

Next, we note that the law of Colorado has a substantial relationship to this dispute. For example, Fox's headquarters in Colorado controlled and directed the financial and personnel aspects of the branch offices. Additionally, Ernst traveled to the Colorado office in his attempt to get Fox to waive article 17. Such conduct, we feel, is illustrative of the fact that Ernst recognized Colorado as the corporate headquarters. Thus, only violation of a strong public policy of Nevada may bar the enforcement of Fox's

article 32 governing choice of law. It is here that the district court erred.

We do not agree that article 17 is a restrictive covenant. After careful examination, we conclude that Ernst was free to compete with Fox after termination of his employment contract. Article 17 did not eliminate or stifle competition in a geographic area for a set period of time. By Ernst's own acts and admissions, he pursued new employment without restraint. Ernst joined an accounting firm in the same city immediately upon his termination with Fox. In fact, Ernst signed a provision similar to article 17 when he joined the new firm. Article 17 only required that Ernst pay for any Fox clients he chose to service in the two-year period following his voluntary withdrawal. Ernst was free to serve these clients if he determined that it was economically advantageous for him to do so.

Article 17 protects a legitimate business interest of Fox. A professional practice such as Fox must be allowed to protect the "fruits of their labor." Article 17 was a protective mechanism. It permitted Fox to preserve the anticipated ongoing revenue of its clients. Thus, if Ernst chose to appropriate clients, he would be required to pay the reasonable value of any fee of which Fox was deprived. Additionally, we note that the damages incurred by Fox when a withdrawing partner appropriates clients is not easily ascertainable. Thus, article 17 is a liquidated damages provision.

For these reasons, we deem Fox's article 32 of the partnership agreement (governing the choice of law) to be enforceable. We now examine Fox's liquidated damages provision under the law of Colorado.

### Colorado Law

A provision for liquidated damages is valid in Colorado provided three conditions are present. First, the anticipated damages must be an uncertain amount or difficult to prove. Second, the parties must have intended to liquidate the damages in advance. Lastly, the damages stated must be reasonable. The damages cannot be disproportionate to the presumable loss or injury. Perino v. Jarvis, 312 P.2d 108, 109 (Colo. 1957).

Here, we note that the losses incurred by Fox when a partner withdraws and appropriates the firm's clients are difficult to determine. At the time of contracting, neither Fox nor Ernst knew the number or the types of clients that Ernst would eventually serve. Fox lost the goodwill created by these client accounts. At the time of contracting, the worth of a potential client account would have been impossible to determine.

Next, it is apparent from the record that Fox and Ernst intended to liquidate any damages that might occur. Ernst was

aware of article 17 and signed several amended agreements containing the provision. Interestingly enough, Ernst also signed a similar provision when he joined the Harris firm. We also note that the damages stated appear to be reasonable. The damages amount to an average fee accrued by the partnership during a one-year period. We note that trial testimony revealed that client accounts are generally valued at 100 percent or 125 percent of the client's annual fee. Thus, Fox is attempting to collect damages no greater than the price it might charge a third party who wished to acquire a Fox account. For these reasons, article 17 is a valid liquidated damage provision pursuant to Colorado law.

We are concerned, however, with Ernst's assertion that the liquidated damages were levied against too many clients. For example, he points out that Fox claims damages for Judy Tompkins but notes that he never worked for her while at Fox. Upon remand, the district court shall determine the number of clients falling within the scope of article 17.

### Conclusion

We reverse the district court's judgment because it failed to apply the parties' choice of law provision. Additionally, we hold that Fox's liquidated damage provision did not act as a penalty and was enforceable under Colorado law. We have reviewed the other contentions raised on appeal and have determined that they lack merit. Our resolution of the appeal renders Ernst's cross-appeal moot. We, therefore, remand the appeal for further proceedings consistent with this opinion.