2088

J.W. HUNT AND COMPANY, Respondent v. Bobby L. DAVIS, Appellant.

(437 S.E. (2d) 557)

Court of Appeals

*Thomas E. McCutchen* and *Herbert W. Hamilton* of *Whaley, McCutchen, Blanton & Rhodes*, Columbia, *for appellant.*

*Harold W. Jacobs* and *Robert C. Byrd* of *Nexsen, Pruet, Jacobs & Pollard*, Columbia, *for respondent.*

Heard Oct. 4, 1993.

Decided Nov. 8, 1993. Reh. Den. Dec. 15, 1993.

GOOLSBY, Judge:

J.W. Hunt and Company, an accounting partnership, brought suit against Bobby L. Davis, a former partner, alleging breach of contract and seeking enforcement of Article VII of the partnership agreement. Pursuant to Rule 56, SCRCP, both parties moved for summary judgment. The trial judge enforced Article VII when he granted Hunt and Company

summary judgment and awarded it damages. Davis appeals. We affirm.

Hunt and Company has operated in South Carolina as a public accounting firm since 1934. Davis became a voting partner of the firm in 1971.

In 1986, the partners of Hunt and Company adopted a new partnership agreement that included Article VII. The new partnership agreement replaced one that the partners had adopted four years earlier.

The earlier partnership agreement contained a provision that prohibited a withdrawing partner from rendering any accounting services to the firm's clients for a five-year period. In contrast, Article VII of the new partnership agreement allows a withdrawing partner to service former clients provided the partner pays the partnership liquidated damages that are to be calculated using a formula prescribed by Article VII.[1]

In 1990, Davis resigned from the partnership and began serving several of the partnership's clients. The combined billings for accounting services rendered by the partnership for these clients in 1989 totalled $439,534. Using the formula prescribed by Article VII, the trial court determined Davis owed the partnership $879,068 in damages.

On appeal, Davis argues the trial judge erred in concluding Article VII is not a covenant not to compete. We disagree.

Other jurisdictions have examined similar provisions involving accounting partnerships and have decided such provisions are not covenants not to compete.

---

[1] Article VII reads:

In the event a Partner either voluntarily or involuntarily leaves the employ of the Firm and such Partner either "directly or indirectly" within a period of three (3) years of such departure from the Firm does work for former or existing clients of the Firm, such partner shall pay the Firm the following as liquidated damages: An amount equal to two (2) times the annual gross billings to the client for the last full year the client was a client of the Firm, which amount shall be paid within thirty (30) days of written demand by the Firm. The meaning of "directly or indirectly" is that such Partner will not render public accounting services in any of its phases, as an individual practitioner, as a member of a partnership of which he is a partner, or as an employee of an employer, provided, however, this provision shall not apply if such partner is employed by a client as an employee on a full-time basis as a treasurer, comptroller or in a similar capacity.

In *Dixon, Odom & Co. v. Sledge*, 59 N.C. App. 280, 296 S.E. (2d) 512 (1982), the court decided a provision requiring a withdrawing partner to pay to the partnership a percentage of all fees earned by the withdrawing partner from former clients for three years was not a covenant not to compete. The court stated:

> The [provision] simply describes the obligations of the parties with regard to . . . division of fees which [the withdrawing partner] obtained from "former clients." The [provision] did not restrict the area in which [the withdrawing partner] could practice accounting nor did it prohibit him from serving former clients of the [partnership].

*Id.* 296 S.E. (2d) at 515.

In *Engel v. Ernst*, 102 Nev. 390, 724 P. (2d) 215 (1986), the court examined a provision that required the withdrawing partner to pay to the partnership a percentage of the partnership's annual fees collected over a three-year period prior to the withdrawing partner's departure. The court, in holding the provision was not a covenant not to compete, noted the withdrawing partner

> was free to compete with [the partnership] after termination of [the partner's] employment contract. [The provision] did not eliminate or stifle competition in a geographic area for a set period of time. . . . [The provision] only required that [the withdrawing partner] pay for any [partnership] clients he chose to service in the two-year period following his voluntary withdrawal. [The withdrawing partner] was free to serve these clients if he determined that it was economically advantageous for him to do so.

*Id.* 724 P. (2d) at 217.

In *Francis v. Schlotfeldt*, 10 Kan. App. (2d) 517, 704 P. (2d) 381 (1985), the court declined to find a covenant not to compete where the withdrawing partner could take certain clients with him, albeit subject to the payment to the partnership of a percentage of its billings. The court stated:

> [The provision] does not prohibit a [withdrawing partner] from practicing his profession within either a certain time

or place. [It] places no restrictions on the right of the withdrawing partner to accept work from former clients or to even actively solicit their business. . . . Thus, rather than attempt to [restrict competition], the agreement requires the withdrawing partner to compensate the [partnership] for lost business.

*Id.* 704 P. (2d) at 382.

Like the provisions examined by the courts in *Dixon, Engel,* and *Francis,* Article VII is not a covenant not to compete. Article VII does not stop Davis from engaging in competition with his former partners. He is able now to practice his profession anywhere and to offer accounting services to anyone, including former clients. Stated differently, Article VII neither prohibits Davis from practicing public accounting for any specific period of time nor from servicing any client in any specific geographic region.

In support of his assertion that Article VII is a covenant not to compete, Davis argues our decision is controlled by *Almers v. South Carolina Nat'l Bank,* 265 S.C. 48, 217 S.E. (2d) 135 (1975). We disagree.

In *Almers,* the court applied the "reasonableness" analysis applicable to covenants not to compete to a provision in an employment contract that forfeited the withdrawing employee's accrued profit-sharing benefits in the event the employee competed with the employer.

Unlike *Almers,* there is no employment relationship involved in this case. Instead, the relationship here is a partnership agreement between partners with equal bargaining power. When Article VII was adopted in 1986, Davis formally assented to Article VII by signing the agreement. Although the partnership agreement was subsequently amended five times, Article VII remained intact. As opposed to the sole protection of an employer's interest accomplished through the forfeiture of accrued benefits in *Almers,* Article VII, a provision for which Davis bargained, afforded Davis protection against withdrawing partners from the time of the Article's adoption until Davis' withdrawal in 1990.

Under these circumstances, we hold Article VII is not a covenant not to compete "but simply a [contractual] business arrangement incident to the continuing practice of the parties

[sic] respective accounting professions." *See Miller v. Williams*, 300 So. (2d) 752, 755 (Fla. Dist. Ct. App. 1974) (wherein the court analyzed a provision that required withdrawing employee who services firm clients to pay one-third of the fees collected by the former employee for three years following termination). Being nothing more than a term of an ordinary contract, we do not apply the "reasonableness" test typically applied in cases involving covenants not to compete and, therefore, enforce Article VII "without inquiry into its fairness." *Francis*, 704 P. (2d) at 382.

Although Davis may find Article VII's effects to be burdensome, "a bad [partnership agreement] does not become a restraint of trade because it is onerous." *Isler v. Shuck*, 38 Or. App. 233, 589 P. (2d) 1180, 1183 (1979).

Accordingly, the judgment is

Affirmed.

HOWELL, C.J., and CURETON, J., concur.