Pack Brothers Body Shop v. Nationwide Mut. Ins. Co., 2003 NCBC 2

| NORTH CAROLINA | | IN THE GENERAL COURT OF JUSTICE |
|---|---|---|
| | | SUPERIOR COURT DIVISION |
| GASTON COUNTY | | 01 CVS 805 |

PACK BROTHERS BODY SHOP, INC. a )
Corporation, and RONNIE PACK, an )
individual, )
                                    )
    Plaintiffs, )
                                      ) **POST-TRIAL ORDER**
v. )
                                      )
NATIONWIDE MUTUAL INSURANCE )
COMPANY, a corporation, a.k.a. )
NATIONWIDE INSURANCE )
ENTERPRISE and JOE BENKENDORF, )
Individually and as agent of NATIONWIDE )
INSURANCE COMPANY, )
                                      )
    Defendants. ))

{1}     THIS MATTER was heard before the Court on March 20, 2003 on the motion of Plaintiffs Pack Brothers Body Shop, Inc. ("Pack Brothers") and Ronnie Pack for a new trial pursuant to N.C. Rule of Civil Procedure 59 and the motion of Defendants Nationwide Mutual Insurance Company ("Nationwide") and Joe Benkendorf for attorney's fees and expenses pursuant to N.C.G.S. § 75-1.16. The Court DENIES plaintiffs' motion for a new trial; DENIES defendants' motion for attorney's fees and expenses pursuant to N.C.G.S. § 75-1.16; and, pursuant to N.C.G.S. § 6-20, awards $157,898.51 to defendants as reasonable and necessary costs.

*Brooks Law Office, by Joyce M. Brooks for plaintiffs.*

*Law Offices of David Phillips, by David A. Phillips for plaintiffs.*

*Robinson & Elliott, by William C. Robinson for defendants.*

*Nelson Levine de Luca & Horst, by Michael R. Nelson and Craig A. Cohen for defendants.*

**Plaintiffs' Motion for a New Trial**

{2}     Plaintiffs have moved for a new trial pursuant to Rule 59 based on manifest disregard by the jury of the instructions of the court, and insufficiency of the evidence to justify the verdict or that the verdict is contrary to law. Specifically, plaintiffs allege that the jury disregarded the instructions of the Court on the issues of slander and unfair trade practices; that there was insufficient evidence to justify the verdict on these issues; and the verdict is contrary to law.

{3}     Having heard the evidence and had the opportunity to judge the witnesses, the Court concurs fully in the jury verdict. Not only could the jury have reached this verdict, it *should* have reached this verdict. Plaintiffs failed to prove any injury during the course of this trial. Prior to trial, during trial, and just before jury deliberations began, the Court cautioned plaintiffs' counsel that a jury would be unlikely to find any substantial damages based upon the evidence. As the trial unfolded, it became increasingly clear that plaintiffs would have a difficult time convincing a jury of liability as well as

damages.  Damages or injury were critical elements of proof on almost all of plaintiffs' claims.  The jury was composed of at least three members who had done auto body repair and a fourth whose husband had been in the auto body repair business.  It was a good, diverse, and intelligent jury.  This jury paid close attention and understood the issues.  It was the sole determiner of facts.  Based on the Court's opportunity to observe the witnesses, there were grounds upon which the jury could have disbelieved some of the testimony of plaintiffs and their witnesses.

{4}    As to certain slander *per se* claims, plaintiffs did not introduce the deposition of one of the people they alleged committed slander *per se,* Ms. JoRhetta Cash, nor did she testify at trial.  Ms. Cash was an independent Nationwide sales representative.  The jury was entitled to weigh the testimony of the witnesses that testified as to Ms. Cash's statements.  One of those witnesses was the father-in-law of a Pack Brothers employee; the other witness appeared confused and had difficulty testifying.  The jury was instructed on agency, credibility, and interested witness testimony.  Plaintiffs had the burden of proving agency.  They failed to do so.  The jury weighed the testimony before them and found that Ms. Cash, Mr. Benkendorf, and Nationwide had not committed slander *per se.*  The jury also considered libel and slander *per quod* claims.  The plaintiffs obviously did not prove damages to the jury's satisfaction.

{5}    Unfair trade practice issues are a matter of law for the Court to decide based on interrogatories answered by the jury; the jury did not answer the unfair trade practices interrogatories favorably for plaintiffs.  Plaintiffs did not object to the interrogatories posed to the jury; in fact, the Court modified some of the interrogatories to reflect changes suggested by plaintiffs.  The jury determined, rightfully in the Court's view, that Nationwide was justified in its reaction to the Pack Brothers' hostile actions.

{6}    The Court finds the jury did not manifestly disregard the instructions of the Court; the evidence was sufficient to justify the verdict; and the verdict is not contrary to law.  Plaintiffs' motion for a new trial is DENIED.

## N.C.G.S. § 6-20

{7}    N.C.G.S. § 6-20 states:  "In other actions, costs may be allowed or not, in the discretion of the court, unless otherwise provided by law."  N.C.G.S. § 6-20 (2002).  Our Court of Appeals was confronted with the issue of whether or not deposition expenses could be charged as an assessable cost in a civil action in *Odom & Co. v. Sledge,* 59 N.C. App. 280, 296 S.E.2d 512 (1982).  The Court of Appeals has held that they can. *Id.* ("As a general rule, recoverable costs may include deposition expenses unless it appears that the depositions were unnecessary. Even though deposition expenses do not appear expressly in the statutes they may be considered as part of 'costs' and taxed in the trial court's discretion."); *see also Sealey v. Grine*, 115 N.C. App. 343, 444 S.E.2d 632 (1994) (allowing costs relating to a deposition, including costs for traveling to and from the deposition, videotaping the deposition, copies of the deposition, and court reporting services); *Muse v. Eckberg*, 139 N.C. App. 446, 533 S.E.2d 268 (2000) (disallowing costs incurred in preparation of depositions); *Milton v. Lowe's Food Stores,* 121 N.C. App. 675; 468 S.E.2d 513; 1996 (finding that, on the particular facts, "a showing by defendant that the deposition costs were reasonable and/or necessary was not required"); *Alsup v. Pittman,* 98 N.C. App. 389, 390 S.E.2d 750 (1990).

{8}    The Court also notes that the "taxing of costs, including deposition expenses, is in the discretion of the trial court and is not reviewable on appeal." *Bales* v. *Evans*, 94 N.C. App. 179, 183 379 S.E.2d 698, 701 (1989) (citing *Dixon, Odom & Co. v. Sledge*, 59 N.C. App. 280, 286, 296 S.E. 2d 512, 516

(1982)); *Ensley v. Nationwide Mut. Ins. Co*., 80 N.C. App. 512, 342 S.E.2d 567 (1986).   In the case before this Court, the taking of a large number of depositions was warranted by the case and the damage claims asserted.

{9}      The Court exercises its discretion to award fees for the subpoenaed expert witness testimony of Kevin Walker, William Anderton, and William Booth.   In exercising its discretion, the Court relied on the cases cited above and the following two additional cases:  (1) *Wade v. Wade*, 72 N.C. App. 372, 384, 325 S.E.2d 260, 271 (1985) ("Unless an expert witness is subpoenaed, however, the witness' fees are not generally recognized as costs.") (citing *State v. Johnson*, 282 N.C. 1, 191 S.E. 2d 641 (1972); N.C. Gen. Stat. § 7A-314 (1981)); 20 Am. Jur. 2d *Costs* § 65 (1965)) and (2) *Williams v. Boylan-Pearce, Inc*., 69 N.C. App. 315, 321, 317 S.E.2d 17, 21 (1984) ("N.C. Gen. Stat. § 7A-314(d) (1981) provides that the court in its discretion may award expert witness fees. These fees may be awarded only if the witness' testimony was material and competent.").

{10}     The expert testimony was not simply permissible, it was necessary in order to counter positions taken by plaintiffs that were unsustainable.  It was material and competent.  The work done by Kevin Walker is an example.  The plaintiffs asked the jury for $24 million in damages, including a request for $22 million for loss of good will.  Their position that they gave up the opportunity to double the size of their business and their profits based solely on a concern about their relationship with Nationwide, which represented ten to fifteen percent of their business, was patently untenable and properly rejected by the jury.  Plaintiffs actively pursued this action as a big money case and should not have been surprised that defendants required the use of an expert accountant to examine and testify with respect to their damage claims.  The taking of Kevin Walker's deposition and its associated costs were reasonable and necessary.

{11}     Faced with the argument that the confrontation between Ronnie Pack and Joe Benkendorf was "staged" and a pretext for an unfair trade practice, defendants' use of William Booth's expert testimony to counter that claim was reasonable and necessary.   Thus, the costs of taking that deposition were reasonable and necessary.

{12}     Similarly, the use of Mr. Anderton was reasonable and necessary.  Prior to trial, plaintiffs took the position that statements to the effect that they were "expensive" or that their charges were "high" were slanderous.  Defendants reasonably hired Mr. Anderton to establish that plaintiffs' charges were generally higher than similar shops in the area. It was not until trial that *plaintiffs* proved by their own testimony and the testimony of their own witnesses that their charges were frequently in excess of similar charges from other repair shops and that they were among the more expensive repair shops in town.   The taking of Mr. Anderton's deposition and its associated costs were reasonable and necessary.

{13}     The Court finds the following costs reasonable and necessary pursuant to N.C.G.S. § 6-20 and awards $157,898.51 in costs to defendants:

Expert Fees for:

| | |
|---|---|
| William Booth | $9,425.76 |
| William Anderton | $26,861.08 |
| Kevin Walker | $55,741.00 |
| Sub-Total | **$92,027.84** |
| | |
| Deposition and Trial Transcripts | **$47, 103.53** |

|  |  |  |
|---|---|---|
| Copying Expenses: |  | $9,188.79 |
|  |  | $4,317.67 |
|  |  | $2,078.18 |
|  | Sub-Total | **$15,584.64** |
|  |  |  |
| Court fees and subpoena service |  | **$3,182.50** |
|  |  |  |
| **TOTAL** |  | **$157,898.51** |

Defendants' remaining costs outlined in their motion are either not permitted by statute or denied in the Court's discretion.

### N.C.G.S. § 75-16.1

{14}    As the prevailing party, defendants have requested attorneys fees pursuant to N.C.G.S. §75-16.1, which reads:

> In any suit instituted by a person who alleges that the defendant violated G.S. 75-1.1., the presiding judge may, in his discretion, allow a reasonable attorney fee to the duly licensed attorney representing the prevailing party, such attorney fee to be taxed as part of the court costs and payable by the losing party, upon a finding by the presiding judge that:
> (1)  The party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit; or
> (2)   The party instituting the action knew, or should have known, the action was frivolous and malicious.

N.C.G.S. §75-16.1.   There are two different standards; which one is applicable depends on who the prevailing party is.  Paragraph (1) applies where plaintiffs are the prevailing party, and paragraph (2) applies where defendants are the prevailing party.  In this case, it is clear that the Court must analyze paragraph (2).

{15}     For a defendant to recover attorney's fees under Chapter 75, the Court must find that the party instituting the action knows, or should have known, the action was frivolous and malicious.  This test is unclear and for that reason the Court will make specific findings of fact and then apply what it believes the statutory standard to be so that the appellate courts can rule on the issue on a full record.  The Court will also indicate what its ruling would be if a different standard were applied.  The Court thus makes the following findings and conclusion.

1.         Prior to suit being filed, plaintiffs were aware of statements from their customers that would support claims for slander.  Since those statements were made in connection with their business and to their customers, there was a plausible and non-frivolous basis for the assertion of unfair trade practices claims under N.C.G.S. §75-1.1 in the Complaint.  If the inquiry ends there, defendants would not be entitled to attorney fees.  It could not be said that the institution of the action was frivolous and malicious.

2.         Plaintiffs have prosecuted this action for purposes other than recovery of their actual damages.

3.         Plaintiff prosecuted this action to recover an unwarranted and excessive amount of money from defendant.  Their motivations were greed, punishment, or both.  In that sense, the prosecution of this action was at least malicious and could justifiably be

termed frivolous since the motivations were improper.

4. From the transmission of Ronnie Pack's letter dated December 15, 1999 that contained the threat of a 24.1 million dollar jury verdict to the time counsel asked the jury to award plaintiffs that amount, plaintiffs have failed to take any reasonable steps to resolve their disputes with defendant or to settle this case. They have in effect gambled on obtaining a jury verdict far in excess of any actual damages, and they lost.

5. To the extent that their prosecution of their claims was "for the industry" and their effort was to discourage a legitimate business practice by insurance companies of urging its customers to use direct repair programs, it was improperly motivated. The Court finds as a fact that such improper motivation existed. This finding is based upon the record in this case, not on any out of court statements of plaintiffs.

6. Plaintiffs proved no actual damages as a result of any action of the defendants. Their claims that they abandoned the opportunity to expand their business and double their profits because of the actions of Nationwide, whose insured claimants represent only about ten to fifteen percent of plaintiffs' business, was properly disregarded by the jury. It was not credible.

7. From the altercation at Pack Brothers' premises through trial, defendants have repeatedly expressed a willingness and desire to resolve the business disputes between the parties on a business basis. Defendants made a monetary settlement offer exceeding by a substantial amount any actual damages that plaintiffs claimed other than alleged expansion losses. These overtures were rejected by plaintiffs on several occasions.

8. While the Court does not consider the Offer of Judgment filed under seal an offer that would give rise to a claim for fees and expenses incurred thereafter, it is evidence of a substantial offer that was rejected by plaintiffs. Such action supports the Court's conclusion that plaintiffs tried this case to gamble on getting the same kind of verdict awarded by the Illinois jury as cited in Ronnie Pack's December 15, 1999 letter to Nationwide.

9. To the extent that it is significant to an appellate court, the trial court finds that the confrontation between Ronnie Pack and Joe Benkendorf on November 16, 1999 was not "staged" by Nationwide, but was the direct result of conduct by Ronnie Pack both before and during the occasion on which the confrontation occurred. His refusal to release totaled vehicles owned by Nationwide until he was paid for other work on other vehicles was not legally justifiable and may have been an unfair trade practice. His language and his directions to Joe Benkendorf, which were undisputed, far exceeded any provocation by Mr. Benkendorf. Ronnie Pack and Pack Brothers bear primary responsibility for the adversarial relationship between the parties.

10. This Court reads N.C.G.S. §75-16.1(2) to require a finding that the *institution* of the suit or the claims asserted were frivolous and brought for a malicious purpose. Under that standard, the Court declines to award attorney's fees and denies the motion for fees and expenses under N.C.G.S. §75-16.1. If an appellate court should decide that improper motivation and pursuit of the claims for some purpose other than recovery of actual damages and reasonable punitive or statutory damages, then the Court would

award additional fees and expenses in the amount of $500,294.50. In support of this determination, the Court finds and concludes:

    a.   The time spent by defendants' counsel in defense of this case was fully warranted by the nature of this case and the magnitude of the sum demanded.

    b.   The hourly rates charged by defense counsel were well within the normal range of hourly rates charged by similarly experienced trial lawyers and well below fee requests this Court has seen in other cases.

    c.   The amount of time devoted to the libel and slander claims as opposed to the unfair trade practices claims is difficult to separate, as plaintiff contended that the libel and slander could constitute an unfair trade practice. The damages clearly overlapped. In closing argument, plaintiffs' counsel did not give the jury any suggestion of a breakdown; they simply asked for $24 million total and left it to the jury to figure out how to complete the verdict form if they found liability.

    d.   The Court believes the allocation of $500,294.50 to the unfair trade practice claims is fair and reasonable.

{16}    There is some support in our case law for the view that continuing an action can be malicious and frivolous. *See Weft, Inc. v. G.C. Investment Assocs.,* 630 F. Supp. 1138 (E.D.N.C. 1986); *City Finance Co. of Goldsboro, Inc., v. Boykin,* 86 N.C. App. 446, 358 S.E.2d 83 (1987) ("Once the trial court found that plaintiff's actions were willful and that its refusal to cease calling Mr. Boykin at work constituted an unwarranted refusal by plaintiff to resolve the issue, it properly awarded attorney's fees to defendants."). The Court finds that plaintiffs' motivations for continuing to the point of trial were to gamble on a large verdict and punish Nationwide for using direct repair shops.

{17}    In *Weft,* plaintiffs sued under chapter 75 for securities violations. While the case was still pending, the North Carolina appellate courts held that securities violations are beyond the scope of Chapter 75. *Weft, Inc. v. G.C. Investment Assocs.,* 630 F. Supp. 1138 (E.D.N.C. 1986). The District Court stated that "[u]ntil the North Carolina Supreme Court's decisions in *Skinner* just last August, the applicability of §75-1.1 . . . to securities transactions was not finally settled." *Id.* The court held that it was not malicious, frivolous, or "totally unreasonable" for plaintiffs to continue the claim because there were questions as to whether it was a securities transaction. *Id.* This statement seems to imply that if the court had found it was malicious to continue pursuing their claims, it would have been grounds for defendants to recover attorneys' fees.

{18}    Several factors have influenced the Court's belief that plaintiffs prosecuted this case in a frivolous and malicious manner. First, as outlined above, the Court fully concurs in the jury's verdict. Plaintiff correctly points out that an unfavorable outcome alone is insufficient to support an award for attorney's fees. *See Basnight v. Diamond Developers, Inc.,* 178 F.Supp. 589 (M.D.N.C. 2001). However, *Basnight* points toward using a balancing approach in awarding attorney's fees. In *Basnight,* plaintiffs named a wrong defendant. *Id.* The District Court found that plaintiff "could have reasonably thought" that the defendant should have been a named defendant. The court also stated that "[m]oreover, there are other factors, namely the unreasonableness of the requested fee and the failure to meet certain procedural requirements, that weigh against an award of attorney's fees." This could be read as a balancing attempt. The District Court was unimpressed with the documentation supporting the reasonableness of the attorney's fees and with defendant's inability to follow the

District Court's rules (i.e., failure to confer and missing the deadline for filing the request). *Id.*

{19}     Second, it appears to this Court that plaintiffs' motivation for trial of this case was misplaced and wrong. At no time did it appear to the Court that plaintiffs were trying the case to recover their actual damages. Rather, they appeared to view this case either as a chance to punch a lottery ticket or as an "industry cause." Faced with plaintiffs who were either overreaching monetarily or zealots in a battle between the auto body repair industry and the insurance industry over direct repair shops, defendants had no option but to defend the case with vigor.

{20}     Third, at no time prior to filing suit did plaintiffs attempt to resolve their differences with Nationwide on a business-like basis. Rather, the plaintiffs appeared to be in litigation mode from the outset. Based on the testimony, the Court concludes, as the jury also must have concluded that Ronnie Pack was responsible for the confrontation on November 16, 1999 that allegedly precipitated this litigation. Plaintiffs were looking for a fight before this confrontation. Following the confrontation, plaintiffs received a letter from Nationwide offering to sit down and work out a business solution to their dispute. The only response defendants received was a letter that contained no acceptance of that offer, but did contain the following threat:

> [W]e well [sic] consider filling [sic] an action against Nationwide Insurance similar to the one filed in Springfield Ill [where plaintiffs were awarded $24.1 million]. We have obtained the complete copies of the Springfield Illinois case, and will pattern ours very similar to the one filed in Springfield. Futhermore be advised that there is a second action being filed in Mississippi by three body shops. This is sure to be successful as well. . . . Govern yourselves accordingly.

Letter from Ronnie Pack to Nationwide Insurance of December 15, 1999. Significantly, plaintiffs asked the jury to award them the same amount of money they had threatened to recover in their letter.

{21}     The Court notes for the record and possible consideration by the appellate courts the question of whether the trial court should have intervened *ex mero motu* when plaintiffs' counsel argued to the jury that the verdict should be in the same amount as the Illinois jury had awarded. Had the argument been made expressly and directly, the Court believes it would have been clearly objectionable. There was absolutely no basis in the evidence for an award of $22 million for loss of goodwill. Plaintiffs counsel's argument using that number, combined with the other numbers urged upon the jury to total $24 million, could only have been intended to suggest to the jury that they award the same amount some other jury had awarded in a case in another jurisdiction. Defense counsel did not object, and the jury verdict makes it unnecessary to rule on the issue now. The closing argument supports the Court's belief that this litigation was pursued as a gamble to recover a large verdict similar to the verdict in the Illinois case and to punish Nationwide for using direct repair shops.

{22}     The plaintiffs' conduct following the trial confirms their use of the litigation to foster other litigation against the insurance industry. "The Packs (Ronnie, Brandie, Larry)" posted the following on the Prodiscussions.com website on Tuesday, February 11, 2003 at 12:11 p.m.:

> This morning we instructed our attorneys to appeal the case. It will be sixty days before we can get the trial transcript. When we do, and it is agreeable to our attorneys then we will release this to anyone who wants it. We have no intention of giving up, we will take this to the limit. We have been blessed with the ability to take this case forward. IT IS FOR OUR INDUSTRY!!! . . . We appreciate everyones support. We could have

settled out of court, but we did not.  It was a gamble, we lost, but if I had to do it over I would do it again[.]

The Packs, *Appeal,* http://www.prodiscussions.com/cgi-bin/pro_discussions.pl (Feb. 11, 2003), *at* http://www.prodiscussions.com/cgi-bin/pro_discussions.pl (hard copy on file with the North Carolina Business Court).

{23}    The Court reads the statute to require a finding that the institution of the suit or the claims asserted therein were frivolous and brought for malicious purposes.  Under that standard, the Court declines to award attorney's fees and DENIES the motion for fees.

{24}    The relationship between auto body repair shops and insurance companies is fraught with litigation potential.  The Legislature has acted to protect against certain abuses by the insurance industry but did not restrict the use of direct repair shop programs or prevent the insurance industry from making referrals, combined with adequate disclosure and freedom of choice by the insured claimant.  Insurance companies may not use libel, slander, or unfair trade practices to direct business to direct repair shops.  This was a case in which the parties should have reached a business agreement on how they would deal with each other.   The evidence proved that the Pack Brothers were expensive and Nationwide was entitled to say so to its insureds.  Pack Brothers, through Ronnie Pack's conduct, gave Nationwide a reason to restrict its employees.  The Packs should have found a way to resolve the problem other than threatening and then pursuing a $24 million jury verdict for which there was no basis in the record for finding damages.

{25}    If an appellate court should decide that improper motivation and pursuit of the claims for some purpose other than actual damages and reasonable punitive or statutory damages, then the Court would award additional fees and expenses in the amount of $500,294.50

### VI. Conclusion

{26}    The Court DENIES plaintiffs' motion for a new trial; DENIES defendants' motion for attorney's fees and expenses pursuant to N.C.G.S. § 75-1.16; and, pursuant to N.C.G.S. § 6-20, awards $157,898.51 to defendants as reasonable and necessary costs.

SO ORDERED this the 1st day of April 2003.

Ben F. Tennille
Special Superior Court Judge
for Complex Business Cases